## Pioneer Savings and Loan Company v. Michael S. Brockett.

1. CORPORATIONS—*Exercise of Conferred Powers Binding upon Stockholders.*—The exercise of a power expressly conferred upon a corporation by its by-laws, can not be questioned by the stockholders.

2. BY-LAWS—*A Part of the Stockholder's Contract.*—Where it is stipulated by the certificate of stock that the by-laws of the association shall be a part of the contract between the association and the stockholder the latter will be bound by the by-laws and will not be permitted to question legitimate exercise of a power conferred thereby upon the association.

3. SAVINGS AND LOAN ASSOCIATIONS—*Payments upon Stock, Not upon Indebtedness.*—When a stockholder in a savings and loan association is also a borrower from said association, payments of dues upon his stock are not payments upon indebtedness, and do not of themselves work an extinguishment of such indebtedness.

**Foreclosure Proceedings.**—In the Circuit Court of White County; the Hon. EDMUND D. YOUNGBLOOD, Judge, presiding. Appeal by defendant. Heard in this court at the August term, 1894. Reversed and remanded. Opinion filed March 23, 1895.

APPELLANT'S BRIEF, CALHOUN, STEELY & JONES, ATTORNEYS; GEORGE D. EMERY, OF COUNSEL.

A stockholder in a building association sustains a dual relation to the corporation:

1. He is a debtor to the extent of the unpaid balance of his stock, and also of any loan made by him. Mich., etc.,

Ass'n v. McDevitt, 77 Mich. 1; Thompson on B. A., p. 23, Sec. 3; p. 85, Sec. 37.

2. He is a creditor to the amount of his stock payments, with accrued profits, if any. 2 Am. and Eng. Ency. of Law, p. 610; Thompson on B. A., p. 22, Sec. 3; p. 59, Sec. 1.

Such corporations occupy a place between a private corporation and a partnership, and no other corporations are given such powers, and no other stockholders have such rights. Thompson on B. A., p. 23, Sec. 3.

Payments on his stock are not *ipso facto* payments on his loan. In Thompson on B. A., p. 85, Sec. 39, it is said: "The borrower's liability on his stock and his liability on his loan being different, payments on his stock are not *ipso facto* payments on the mortgage debt or loan. The law holds the distinction, and requires appropriation by the association or application by the member to effectuate that purpose. A member may, then, at any time apply his stock payments as a credit on his debt by paying in cash the balance, if any. And the credit is the withdrawal value of the share (Watkins v. B. A., 97 Pa. St. 514), to be ascertained by the charter and by-laws without regard to the improper withdrawal of shares by other stockholders." Building Ass'n v. Gallagher, 3 Law Times, N. S., 101.

The "value," it is held, is to be ascertained by the number of stock payments, excluding interest or profit, and less expenses. B. A. v. Groesbeck, 41 L. J. 16; Mechanics' Ass'n v. Conover, 1 McCart. 219; Watkins v. Ass'n, 10 W. N. C. 414.

He may pay off the loan and retain his stock. Springville Ass'n v. Raber, 33 Leg. Int. Pa. 329.

As to the rules for computing amount due upon foreclosure, see Thompson on B. A., p. 93, Sec. 47, and p. 96, Sec. 51; Endlich on B. A., Secs. 154–164. The association holds a lien on the stock of a member for the payment of fines, and he can not apply his stock in cancellation of his debt until that lien is satisfied. Thompson on B. A., p. 101, Sec. 5.

The measure of the stockholder's liability is the amount of his stock subscription (State, etc., Ass'n v. Kellogg, 63 Mo. 540) and fines imposed for failure to make payments

when due. Union B. A. v. Masonic Hall Ass'n, 29 N. J. Eq. 389; Parker v. Butcher, L. R., 3 Eq. 762.

The stock contract and the mortgage or loan are separate and distinct contracts, and a payment upon the one is not a payment upon the other. Southern B. and L. Ass'n v. The Anniston Loan and Trust Co. (Ala.), 15 So. Rep. 123; North A. B. Ass'n v. Sutton, 35 Penn. St. 463; Endlich on B. Ass'ns, Sec. 452; Washington B. and L. Ass'n v. Hornbacker, 42 N. J. L. 635; Robertson v. Homestead Ass'n, 69 Am. Dec. 163, and Freeman's notes thereto; Thompson on B. Ass'ns, p. 65, Sec. 39.

ORGAN & ORGAN and M. H. MUNDY, attorneys for appellee.

MR. PRESIDING JUSTICE SAMPLE DELIVERED THE OPINION OF THE COURT.

On February 1, 1887, the appellee subscribed for and obtained ten shares of stock in the National Building, Loan and Protective Union, which name was changed to that of appellant, of $100 each, as evidenced by stock certificate No. 3872, on which stock he borrowed $1,000, May 2, 1887, giving his note therefor, secured by a mortgage on 80 acres of land, due and payable five years after date, with interest at five per cent per annum and five cent premium per annum thereon, payable monthly, on or before the last Saturday in each month.

| | | |
|---|---:|---:|
| The appellee paid sixty monthly installments of 60 cents each on his stock.... | | $360 00 |
| He also paid forty-two protective, or withdrawal installments, of 25 cents each.. | | 105 00 |
| And a cancellation fee of $3 per share in advance .......................... | | 30 00 |
| Total paid on stock.................... | | $495 00 |
| He also paid in all, interest on the note at five per cent........................ | $238 00 | |
| And the same amount of premium on the loan............................... | 238 00 | 476 00 |
| Total amount paid on stock and loan | | $971 00 |

The note and mortgage became due February 1, 1892. On the 13th day of June, 1893, appellee filed his bill to cancel said mortgage, on the ground the debt had been fully discharged by the foregoing payments.

The appellant answered the bill and filed a cross-bill to foreclose the mortgage, alleging the debt was not paid, on which issue was joined.

The appellee's case is based upon the certificate of stock issued to him, the material portion of which is as follows: "This certifies that Michael S. Brackett * * * is hereby constituted a shareholder of the National Building, Loan and Protective Union, incorporated under the laws of the State of Minnesota, and holds ten shares therein of $100 each, and in consideration of the admission fee * * * and full compliance with the terms, conditions and by-laws printed on the front and back of this certificate, which are hereby referred to and made a part of this contract, the said Union agrees to pay said shareholder * * * the sum of $100 for each of said shares at the end of five years from the date hereof, payable in the manner. and upon the conditions set forth in said terms, conditions and by-laws hereto attached. And the Union further agrees to pay said shareholder * * * upon the terms and conditions above named, at the maturity of this certificate, whether by death or at the expiration of five years, a further sum not to exceed the amount of all protective payments made upon this certificate. * * * This certificate of shares is issued to and accepted by the holder, upon the following express terms and conditions: First, the shareholder * * * agrees to pay * * * a monthly installment of sixty cents on each share named in this contract, the same to be paid on or before the last Saturday of each month during the continuance of this contract, and the further sum of twenty-five cents on each share as a protective payment to be paid on or before thirty days from the date of the notice of the same.

There are seventeen conditions in all. The fourth provides for a forfeiture on failure to make such payments, and for the imposition of a fine; the thirteenth for a cancellation

fee of $3 per share; the sixteenth that five per cent of all installments and payments may be used to defray expenses; the eleventh provides that the by-laws which are attached * * * shall be part and parcel of this contract and * * * shall be construed together." Article 14 of the by-laws provides that each certificate shall be charged with any and all amounts that may be owing from the shareholder, whether dues, assessments, loans, interest or premium, and at the time of paying the certificate, the association reserves a lien thereon to secure the payment of such indebtedness, and the right to deduct and withhold such account or indebtedness in payment thereon.

Article 15 provides that each shareholder shall pay a protective payment on each share of stock, of twenty-five cents, within thirty days after notice, for the purpose of paying shares of stock matured by the death of any shareholder, or when deemed necessary by the board of managers, forty per cent of which shall be used for that purpose, forty per cent shall be placed in the return protective payment fund, "and an amount equal to the same at the date of maturity shall be accepted by the shareholder as full payment as return protective payment;" the remaining twenty per cent shall be placed in the reserve or contingent fund.

Article 22 provides that the association reserves the right to divide its shareholders into classes for the purpose of assessment at any time it may choose to do so, and further reserves the right, * * * when it is deemed necessary by the board of managers, to protect the association, to require such payments as may be necessary to pay off or cancel shares, * * * such canceling payments not to exceed twenty-five cents on each share included in any certificate for every share maturing by time in any one month.

On April 28, 1891, the board of directors and the executive committee framed a resolution classifying certain stock in series "A" and providing that all shares included in certificates numbered from 3,300 to 5,018, inclusive, should each be assessed or required to pay, as protective payments, in addition to those already paid, such a number of payments as

will make in all, 100 protective payments per share. The resolution recited that it was deemed necessary. The secretary, under the resolution, was directed to issue the notices and make the call for payments on the shareholders. The appellee was duly notified to make payments in the sum of $170 on his ten shares, for the purpose of maturing said stock. This he refused to do, although his stock certificate was included in said classification, and came within the numbers named in the resolution. He evidently relied on the contract on the face of his certificate, without taking into consideration the provision that the $100 per share was to be paid to him in five years "in the manner and upon the conditions set forth in the terms, conditions and by-laws attached." Those terms, conditions and by-laws, as heretofore shown, required him, first, to pay sixty cents per month on each share of stock; second, twenty-five cents per share as protective payments, within thirty days after notice; third, such payments as the appellant might deem necessary to pay off and cancel shares. This third requirement, as will be found by an examination of article 22, is only limited, as to the amount required to be paid, by the number of shares included in such classification as therein authorized, "maturing by time in any one month." The exercise of the power by that article vested can not be questioned by the appellee, if the action taken is within its terms. The action was clearly taken to protect the association against loss, under a power expressly conferred.

There is no requirement on the part of the association to return any of the money so received, as there is for money paid as protective payments, under article 15. The power is given and the money is paid thereunder for the purpose of maturing the stock within the time agreed in the certificates.

Had appellee read his entire contract, he would have observed it. As shown by his letters, he supposed that by the payment of the sixty cent monthly installments, the interest and premium at five per cent each for five years on $1,000, the stock would be matured and his debt discharged.

Had he exercised his every-day judgment he would have known such payments could not mature the stock in that time, and that no company could do business on such a basis. He also assumed that the protective payments made by him, as shown by his letters, were to be fully returned to him. Had he read his contract, he would have found the agreement was that he was to receive, at the expiration of five years, "not to exceed the amount of all protective payments," and by reading article 15 of the by-laws printed on his certificate, would have found that, in no event, was he to have returned to him more than forty per cent of such protective payments, with possibly its accumulations, if any, and that he had distinctly so agreed.

The evidence is undisputed that appellee was notified to pay ninety-one protective payments, so-called, on account of stock maturing by the death of shareholders, as provided by article 15 of the by-laws, which, at twenty-five cents per share, would in the aggregate amount to $227.50. He only made forty-two such payments, amounting to $105. He was required to make certain payments on his certified stock, No. 3,872, which was in series "A," in order to mature the stock certificates therein from 3,300 to 5,028, which he refused to do. The amount due under this call was $145, at the lowest estimate.

Fines to the amount of $68 for failure to make protective payments, as provided by the fourth condition of his certificate, were assessed against him. He agreed that five per cent of all payments might be used to defray expenses, which amounted to $31.68, as taxed by the association. Ignoring the protective payments, which he failed to make, there was otherwise due from appellee $244.37, which, by article 24 of the by-laws, are made a lien on his stock, with the right given to deduct the same from the indebtedness, as represented by his certificate, which matured February 1, 1892, according to its face terms.

The evidence shows the accumulated profits had made his stock worth at that time $1,000, less said $244.37, or $755.63, on which he had only paid $495. The payments of interest

and premium on the loan were made under an entirely distinct contract. They were made for the use of the money loaned, and not as payment on stock. As is said by Endlich on the Law of Building Associations, Sec. 452, "It has become a well recognized doctrine that payments of dues upon stock are not payments to the mortgage debt, and do not, *ipso facto*, work an extinguishment of so much of the mortgage."

By the payment, then, of $244.37, his stock would have matured February 1, 1892, and been released of all liens thereon, and he would have been entitled to a release of his mortgage.

It is suggested in the argument of appellee that appellant had no legal right to do business in this State and make the loan. The statute, as well as decisions construing the same, declare such right. The decree on the original bill is set aside, with directions to dismiss the bill, and the decree on the cross-bill is reversed and cause remanded.