COLTRANE et al. v. BLAKE et al.

(Circuit Court of Appeals, Fourth Circuit. February 4, 1902.)

No. 425.

1. BUILDING AND LOAN ASSOCIATIONS—LAW GOVERNING CONTRACTS—DUAL RELATIONS WITH BORROWING STOCKHOLDERS.

The relations between a building and loan association and its stockholders, as such, are the same as between other business corporations and their stockholders, and their respective rights and obligations under the contract are governed by the general law, unless modified by statute. As to matters arising out of such relations, the decisions of the courts of the state are not binding upon the federal courts, but when a stockholder becomes also a borrower his contract as such is governed by the local law, and upon the question of his rights and liabilities thereunder the state decisions are controlling.

2. SAME—DISTRIBUTION OF ASSETS IN INSOLVENCY—STATUS OF HOLDERS OF FULL-PAID STOCK.

Holders of full-paid stock issued by a building and loan association as authorized by its by-laws, and which differs from the common or installment stock only in the fact that the holders are paid interest or a fixed dividend at stated periods instead of their proportionate share of the profits of the association, are stockholders, and not creditors, and on the winding up of the corporation in insolvency are entitled to no preference over other stockholders.

3. SAME—EFFECT OF NOTICE OF WITHDRAWAL.

A matured notice of withdrawal given by a stockholder of a building association, as permitted by the terms of his contract, does not operate to terminate his membership, and convert him into a creditor entitled to preference of payment over other members in the distribution of the assets of the association in insolvency, contrary to the express provisions of the by-laws.

4. SAME.

Where certificates of paid-up stock issued by a building association gave the holder the right to withdraw and have his stock redeemed subject to the provisions of the by-laws, which required 30 days' notice of intention to withdraw to be given, the status of a holder of such a certificate as a stockholder is not affected by a notice of withdrawal, given less than 30 days before the commencement of proceedings in insolvency against the association.

5. SAME—ACCOUNTING WITH BORROWING STOCKHOLDERS.

Where a stockholder in a building and loan association becomes also a borrower, his contract as such is governed by the local law, and where by such law it is usurious, in a settlement on the winding up of the association in insolvency before the maturity of his loan he should be charged with interest on the sum borrowed at the legal rate, and credited with all sums paid as premiums and interest, but the local law does not govern as to payments made by him as dues on his stock which are made under his contract as a stockholder, and the principles of equity require that as to such payments he be placed on an equality with nonborrowing stockholders, and share ratably with them in the assets remaining after the debts of the association are paid; and he is not entitled to credit on his loan for such payments where the proceedings are in a federal court, whatever may be the rule of the courts of the state.

Appeals from the Circuit Court of the United States for the District of Maryland.

See 110 Fed. 272, 281, 293.

113 F.—50

Wm. Hepburn Russell (Wm. Beverly Winslow, Morton Schaeffer, Randolph Barton, and Archibald R. Watson, on briefs), for appellant receivers.

Richard S. Culbreth, for appellant Coltrane.

Fielder C. Slingluff, for appellant Baltimore Building & Loan Ass'n.

William Pinkney Whyte, for appellee Powhatan Improvement Co.

Thos. Foley Hisky and M. N. Packard, for appellee Blake and others.

E. S. Douglass and George H. Lamar (Joseph D. Wright, on briefs), for appellees Cummin and Gulliver.

Edwin J. Farber (David Stewart and E. Stanley Toadvin, on briefs), for appellee Wilkins and others.

Henry C. Kennard (Henry A. Whitaker, on briefs), for appellees Eunice R. Pearce and others.

Before GOFF and SIMONTON, Circuit Judges, and PURNELL, District Judge.

SIMONTON, Circuit Judge. This case comes up on appeal from the circuit court of the United States for the district of Maryland. There are now before us three separate appeals growing out of the settlement of the affairs of the Baltimore Building & Loan Association. The Baltimore Building & Loan Association is a corporation created under the laws of the state of Maryland. It conducted a large business for several years, had members, and had placed loans in North Carolina, Virginia, West Virginia, Pennsylvania, and the District of Columbia, as well as in the state of Maryland. The association having become embarrassed, proceedings were instituted in the circuit court of the United States for the district of Maryland by Daniel B. Coltrane, in behalf of himself and all other stockholders against the association, praying for the appointment of a receiver, and for the administration of the affairs of the corporation in that court. The cause coming on to be heard, Bird M. Robinson was appointed receiver, and subsequently Randolph Barton, Esq., was associated with him as co-receiver. Auxiliary suits were instituted in the circuit courts of the United States for the states above mentioned, and in the supreme court of the District of Columbia, and the assets of the association were put in process of collection. The receivers having made progress in this collection, and a goodly part of the assets having been realized, the court entered an order providing for the intervention in the cause of all stockholders and investors in the association for the purpose of ascertaining and protecting their rights. At the same time John C. Rose, Esq., was appointed special master for the purpose of receiving proofs of claims, and he was instructed to report thereon, with his conclusions of law and findings of fact. A large number of interventions have been made. The special master has made his report. The claimants are all holders of stock in the association. Some have paid up their stock subscription entirely, and have been enjoying fixed semiannual dividends at the rates of 8 per cent. per annum with some, and 6 per cent. per annum with others. Some, having paid up their stock

in full, have attempted to exercise the privileges of withdrawal given by the by-laws, and have in accordance with them given the required notice. The insolvency of the association defeated the payment of this withdrawal value. All of these two classes claim to occupy the position of creditors. Others are stockholders who have obtained an advance from the funds of the association and have given security therefor. They claim that in settling, ascertaining, and repaying this advance they are entitled to credit for all sums paid in by them by way of dues, premiums, and interest, and that on an adjustment so made they will be discharged from any further obligation as stockholders. Others are stockholders who have paid their dues regularly up to the insolvency of the association, and have never had any advance. They claim that they are entitled to be paid out of the assets of the association, realized and to be realized, the value of their stock, in equal proportion with all the other holders of stock certificates.

The special master, in an exhaustive and able report, discussed the claims of all these classes, and disallowed those of the first three set out above. He held that all holders of certificates of stock were stockholders, entitled to share in equal proportion the remaining assets of the association, the proportion to be measured by the number of shares held by each. And with regard to the third class, the advanced shareholders, he held that they were not entitled as a credit on their advances to the amount of dues on stock subscription paid by them. Exceptions were taken to his report, and the cause was heard by the circuit court. All the exceptions were overruled, except those to his conclusion as to the third class, the advanced stockholders. As to these the court differed with the special master, and held that they were entitled to credit their advance with the dues as well as with all other money paid by them into the association, by way of premium and interest. Appeals and cross appeals were allowed to the decree of the circuit court, and the whole case is here on many assignments of error.

Before entering in detail into a discussion of these assignments of error, a question underlying all of them must first be met. The court below felt itself bound by the decisions of the court of last resort in Maryland in the solution of all questions arising in the administration of the assets of this insolvent Maryland corporation. It held that these decisions led inevitably to the conclusion reached by it. On the other hand, it is earnestly contended that the questions involved in this case, establishing the relations between stockholders and the corporation the Baltimore Building & Loan Association, are questions of general law, determining the nature and obligation of the contracts growing out of these relations, to be solved according to the principles of equity governing the federal courts, and in no wise controlled by decisions of the state courts.

Building and loan associations differ from an ordinary corporation created to deal in money in this: They are allowed to lend out their money, and, under certain restrictions, as such, are exempted from the usury laws of the state. In many other respects they are as other corporations. Their stockholders, in their relations with the

corporation as stockholders, enter into the same character of contracts, come under the same character of obligations as do stockholders in other business corporations. And these are regulated by the general law, unless modified by statute. The statute law of Maryland has not modified this relation in these respects. The Maryland statutes, so far as building and loan associations are concerned, have special provisions as to the lending of money by them. In this respect do the Maryland decisions control. A corporation of this character is in one aspect a limited copartnership. Each stockholder ventures a certain sum of money, the amount of stock purchased or subscribed by him. His liability is measured by the stock held by him. Usually, if the enterprise fails, and its assets are exhausted in the payment of debts, the stockholder loses the stock, then valueless, and his liability ends. Sometimes as stockholder he is subject to an additional liability, measured always by the stock held by him. As stockholder he shares in the profits of the association, and, of course, to the extent of his stock and any fixed liability beyond it, he must share the losses. "Qui sentit commodum sentire debet et onus." Each stockholder stands on the same footing with regard to each share of his stock, and each is liable equally and in the same respect with every other for his subscription, according to the form in which he contracts to pay it, whether it be in an entire sum in cash or whether it be in installments at fixed intervals. All these are governed by general law,—the law merchant.

But when a building and loan association begins to exercise the purpose of its creation, becomes a lender of money, and any person— a stockholder—gets any of that money, such stockholder assumes a new relation to the association. Whether such a transaction is called an advance from the common fund, or whether it is called a loan, the transaction makes the corporation the creditor, and such person, though a stockholder, the debtor. He incurs a liability which must be discharged. This feature in the business of a building and loan association is regulated and controlled by the local law. Is such a loan or the incurring of such a liability legal? Does the question of usury arise? Are the general statutes against usury modified with respect to this building and loan association? Are the securities given in this transaction valid? All of these questions must be determined by the local law. Provisions as to such matters vary with the states in which they are made.

In the case at bar, each stockholder—every stockholder in the Baltimore Building & Loan Association—bound himself to pay his stock subscription. This was a contract in which every creditor and every other stockholder of the corporation was interested. He had the option of paying it in cash at once, or he could pay it in certain installments at certain fixed times. All the money so paid under these contracts of subscription went into the common treasury, in which every stockholder had an interest. This transaction is perfectly legal, and not dependent for its legality on any local law. It comes within the general law of contracts. If any one, being a stockholder, because he is a stockholder, concludes to get from the common treasury money in it, and gets it, call it a loan or call it an advance, it has

all the characteristics of a debt for which ex æquo et bono he is responsible. He hopes to pay this perhaps by the maturity of his stock at the usual period of similar companies. The insolvency of the company defeats this hope; insolvency brought about by causes which could not be prevented, or perhaps caused by the negligence, fraud, or incapacity of the agents of the stockholders. But this, of itself, cannot release him from his contract, or free him from his responsibility as a stockholder, or cancel his stock. The disappointment which he suffers is common with every stockholder in the association. Every stockholder—each one—has paid his subscription, either in cash or in installments by way of dues, expecting profit at the maturity of the stock in the hoped-for time. The money of each of them has gone into the common fund, and he has used a part of it. The insolvency of the association frees him from the payment of any other dues. But to the extent of the dues paid he is and he remains a stockholder, with all the rights and subject to all the responsibilities of a stockholder. This is according to the law merchant, and no statute of Maryland has altered this law. So the stockholder who has had an "advance" or "loan," whichever term is used, occupies a twofold relation to the company. He is, first of all, a stockholder, bound by his contract of subscription, and enjoying the advantages and suffering the responsibilities of a stockholder. He afterward becomes a debtor, subject to the terms of his contract as borrower,—a contract wholly distinct from that he assumed as stockholder. The one contract comes under the law merchant; the other contract is controlled by the local law.

Holders of paid-up stock; are they creditors of the association? In his very able report the special master discusses and exhausts this question. He holds that they remain stockholders, and are not entitled to stand as creditors. "There is nothing in any of the by-laws of the corporation which as much as suggests that the holders of paid-up stock are anything other than stockholders. They were allowed a vote at stockholders' meetings, and many of them, including the petitioners intervening in this cause, did vote at least by proxy. They were eligible to office, and were so elected. It is true that they received a definite dividend on their stock, and would not have been entitled to any more, no matter how great the profits of the corporation might have turned out to be. But such a contract is not uncommon between corporations and holders of certain classes of stock." And then he quotes 1 Cook, Stock, Stockh. & Corp. Law, § 269; Hamlin v. Railroad Co., 24 C. C. A. 271, 78 Fed. 664, 36 L. R. A. 826; Mercantile Trust Co. v. Baltimore & O. R. Co. (C. C.) 82 Fed. 365. These cases sustain him. The case last quoted was decided by the circuit court of the United States for the district of Maryland. In that case the circuit court (a full bench) says: "There is a legal inference that the claim of a stockholder, with a voice in the management of the corporation, is subordinate to debts due to creditors. That this inference is a well-recognized rule of law, and that to rebut it the expression of a contrary intent, in clear and unambiguous language, is required, is shown by the following citations." Then follows a long list of authorities. If this be the status of this paid-up stock, the

holder of it comes within the rule of law which governs other stockholders. They cannot share the assets until all debts are paid. Plimpton v. Bigelow, 93 N. Y. 592; Fisher v. President, etc., 5 Gray, 373; Gibbons v. Mahon, 136 U. S. 557, 10 Sup. Ct. 1057, 34 L. Ed. 525. And so they are neither more nor less than stockholders. The Maryland courts adopt this view also. Tax Cases, 50 Md. 321. We concur with the court below in overruling the exception to the report on this point, and in adopting the conclusion of the special master.

Are stockholders who have given notice of withdrawal creditors? The special master finds as a fact that, under the by-laws of the association as amended, it is expressly declared that a withdrawal notice does not constitute a withdrawal or terminate the membership, or give to the person filing such notice the status of a creditor, or create any rights of action, legal or equitable, against the association, or in any manner alter or disturb the rights or duties as a member. This ends the case so far as those are concerned who acquired their stock after May, 1899, the date of the amendment.

The master also finds as a fact that, under the by-laws of 1891, 30 days' notice was required before the stock could be withdrawn or reduced. In fact no notice of a desire to withdraw was given 30 days before the appointment of a receiver in any claim proved in this case. The master discusses the question at some length, and reviews the authorities. He shows that there is a conflict of authorities upon the question whether a stockholder who has exercised his right to withdraw, and has given the notice required, and such notice has matured, can rank as a creditor. But all authorities agree that he cannot be recognized as a creditor if such notice has not matured. And this is based on reason. The condition precedent to a right to withdraw is notice for 30 days. This condition has not been fulfilled. The insolvency of the association forbids and prevents its fulfillment. This insolvency puts an end to all business of the association, and destroys its vitality as a going concern.

What are the rights of stockholders who have had advances? It is contended by this class of stockholders, and the contention is sustained by the circuit court, that in the administration of the assets of this insolvent corporation they are to be charged with the sum actually advanced to them, with lawful interest at 6 per cent. per annum, and they are to be credited with all payments made by them by way of dues, premium, and interest, with interest at the same rate, upon the principle of partial payments. Is this the law?

It will be noted that they are stockholders, and that by subscription to the stock they have become bound, as all other stockholders are, to pay this subscription; that by the by-laws it is expressly declared that the losses, if they exceed the undivided profits, shall be charged pro rata against the several shares; that there are other stockholders who have faithfully fulfilled their contracts of subscription; that by the insolvency of the corporation each of them has been disappointed in the expectation upon which their payments were made; yet, by the conclusion reached by the court below,

each stockholder who has had an advance gets back every dollar he has paid into the association, not only upon the contract for usurious interest, but for the sums paid upon his subscription to the stock, whilst every other stockholder who made the same stock contract as he did, upon precisely the same expectation, but who has not enjoyed any advance, is remitted to his pro rata of the depleted assets. Surely this establishes an inequality which is not equity, and throws upon a part of the stockholders all the losses which by the by-laws must be borne by all. This conclusion confuses the obligation of two entirely distinct contracts. In subscribing to the stock, the shareholder binds himself to pay the subscription, either in cash at once or in installments, called dues. This is a perfectly legal contract, if the corporation be a legal one, as the one in question undoubtedly is. Having become a stockholder, he then gets an advance from the common fund. This is another and an entirely distinct contract, based upon an entirely distinct consideration. When one subscribed for stock and paid for it by a mortgage payable at times mutually agreed upon between the parties, this was merely a mode of payment. He stands in two capacities,—one as debtor to the association, the other as stockholder in it. These capacities are independent of each other. Payments on stock are not payments on the mortgage debt, and do not ipso facto work an extinguishment of so much of the mortgage. The payment on one is not necessarily a payment on the other. Ely v. Sprague, 1 Clark, Ch. 351; Southern Building & Loan Ass'n v. Anniston Loan & Trust Co., 101 Ala. 582, 15 South. 123, 29 L. R. A. 120, 46 Am. St. Rep. 138; Wilson v. Martinez, 47 C. C. A. 591, 108 Fed. 705. The conclusion reached by the court below gives to the advanced stockholder the benefit of all payments made upon this independent contract, and also aids them with payments made on the other contract, wholly distinct from it. The contract made by a stockholder subscribing to stock in a business corporation is regulated by the general law common to all such corporations. He binds himself to pay his subscriptions. He shares in the profits of the corporation so long as it is a paying, going concern, and when its career ceases he gets his share of its assets after payment of all the debts. Gibbons v. Mahon, 136 U. S. 557, 10 Sup. Ct. 1057, 34 L. Ed. 525. When he borrows funds of the corporation, he assumes a different relation. Its obligations are determined by the local law. If the loan be usurious, it is not relieved of this taint simply because it is a transaction between the stockholders and the corporation. In adjusting the debt, the local law must be followed. So, in the case at bar, inasmuch as the Maryland statutes make usurious the demand of a fixed premium, and the payment of interest on the whole sum borrowed despite the premium, the stockholder who has borrowed is only accountable for the exact sum received, with interest, and is credited with all sums improperly paid, either as premium or interest. But this adjustment cannot affect his responsibility upon his contract of subscription, and cannot equitably be held to have canceled that obligation. Under the by-laws of this

corporation he does not cease to be a stockholder when he becomes a borrower.

It is supposed that when a stockholder borrows money from the association the consideration influencing him is the ability to repay it in several periodical payments spread over a number of years; that by the insolvency of the corporation this consideration is lost, and the borrowing stockholder released from much of his obligation. But how is his case different in this respect from every other stockholder? A building and loan association is a business enterprise, entered into in the hope of profit. Every stockholder partakes of the adventure, and hopes to share the profit. He cannot escape a share in the losses, limited if it be incorporated, general if it be unincorporated. Each hopes and expects that, with a period approximately definite, the corporation will mature and the profit be realized,—the paid-up stockholder getting his fixed dividend, in the meanwhile expecting full return of the cash paid in; the nonborrowing stockholder paying his dues in several increments, spread over a number of years, and hoping when the maturity is reached that he will get back all he has paid in and a reasonable profit besides. The borrowing stockholder gets the hoped-for profits in advance, and expects at maturity to get back his securities canceled. Each has the same expectation. Each meets with the same disappointment. Yet the conclusion reached by the court below compensates the borrowing stockholder for his disappointment at the expense of every other class.

There is another point of view. A stockholder in a corporation, by reason of his ownership of shares, has the right to participate according to the amount of his stock in the surplus profits of the corporation on a division, and ultimately, on its dissolution, in the assets remaining after payment of its debts. Plimpton v. Bigelow, 93 N. Y. 592; Gibbons v. Mahon, 136 U. S. 549, 10 Sup. Ct. 1057, 34 L. Ed. 525; Fisher v. President, etc., 5 Gray, 373. So, upon the dissolution of the corporation, after the debts are paid, the stockholders rank as creditors, and have a legal claim on so much of the capital stock as remains. The rule in the United States is that the capital stock of a corporation is impressed with a trust for the payment of the creditors of the corporation. Wood v. Dummer, 3 Mason, 308, Fed. Cas. No. 17,944; Sawyer v. Hoag, 17 Wall. 610, 21 L. Ed. 731. Especially is this the case with insolvent corporations. The capital stock of a building and loan association is composed of the subscriptions to it, either by cash or by dues. If any part of these dues is diverted from the claims of creditors generally, and is used for the benefit of a single stockholder by way of credit on a debt due by him to the corporation, it is a misuse of trust funds, and so unlawful.

In our opinion, the debt due to the association by the borrowing stockholder should be adjusted by charging him with the sum really advanced, with interest thereon at 6 per cent., and by crediting him with all sums paid by way of premiums and interest, upon the principle of partial payments, the remainder thus ascertained to be part of the assets of the association; that on the debt account

he receive no credit for dues paid by him; and that in the final distribution of the assets he share in them in proportion to the amount paid in by him as dues upon his stock, with interest thereon for the average time prior to March, 21, 1890, according to the rule recommended by the special master in his report on the Blake intervention.