| 67 | 779 |
|----|-----|
| 71 | 409 |

</div>

THE OTTAWA MUTUAL LOAN AND SAVINGS ASSOCIA-
TION v. GEORGE O. MERRIMAN.

No. 13,309.   ( 74 Pac. 256.)

SYLLABUS BY THE COURT.

1. BUILDING AND LOAN ASSOCIATION — *Whether Stockholder or Creditor — By-laws Construed.*   One who invests money in a building and loan association, receiving as evidence of his investment a document in two parts, one in the form of a certificate of deposit for the amount paid, drawing annual interest based on the earnings of the business, the other in the form of a certificate that he is a member of the association and the owner of a share of its stock, is a stockholder and not merely a creditor, unless the by-laws forbid such conclusion; and *held*, that the by-laws of the association here involved do not forbid it.

2. ———— *Subsequent By-law Requiring Withdrawal Held Invalid.*   The directors of a building and loan association cannot require a member to withdraw his investment except in pursuance of a valid by-law.   A by-law passed after his purchase of stock, permitting them to require such withdrawal of any member, to be designated at their pleasure, such selection not being based upon any equitable principle or upon any rule of general application, is, as to him, unreasonable and inoperative.

Error from Franklin district court; W. H. SHELDON, judge *pro tem.* Opinion filed November 7, 1903. Affirmed.

*William H. Clark,* for plaintiff in error.
*Benson & Harris,* for defendant in error.

The opinion of the court was delivered by

MASON, J. : The Ottawa Mutual Loan and Savings Association is a corporation organized under the laws of Kansas, having for its object "the accumulation and loan of funds, the erection of buildings and the purchase of real estate for the benefit of its members." Its organization conforms in general to the usual building and loan association plan, some of its features, however, being peculiar. Geo. O. Merriman, a resident of Michigan, paid to the association at various times from 1890 to 1897 sums amounting in all to $4500, receiving for each $100 so paid an instrument in the following form, made out upon a printed blank, the only written portions being indicated in the copy by italics :

**No.** *289.*

CERTIFICATE OF STOCK.

This certifies that *George O. Merriman* has paid a registry fee of 25 cents, and is the owner of one share of stock, and is a member of the Ottawa Mutual Loan & Savings Association, subject to the By Laws thereof.
*A. M. Blair,* Prest.    *F. A. Wilkinson,* Secy.

OTTAWA MUTUAL LOAN AND SAVINGS ASSOCIATION.

CERTIFICATE OF DEPOSIT.    No. *289.*

OTTAWA, KANSAS, *Nov. 17,* 1890.

*George O. Merriman* has deposited in this Association *One Hundred* Dollars ($*100.00*) payable with additional deposits, which may be made to increase the deposit account which this Certificate represents to a sum not exceeding $100, to the order of *George O. Merriman* in current funds, with accrued interest, on the return of this Certificate properly endorsed.

This Certificate is payable only as provided by the By Laws of this Association. It will draw interest at the rate of six per cent per annum, or such rate as the Board of Directors may determine, not to exceed the rate of dividend paid on Stock, Sec's 2 & 15 of Art. 5 of By Laws. All dues upon loaned or unloaned shares of stock which the owner of this Certificate may have in this Association are liens on this deposit, Sec. 11 of Art. 5.

This certificate is transferable only in accordance with Art. 7 of By Laws.

*F. A. Wilkinson,* Secretary.

The association paid Merriman each year the amount due under the terms of these instruments until 1900, when it notified him to withdraw his money, contending that thereby it severed all connection with him, except that it held $4500 of his money, which it stood ready to pay. Merriman, however claimed to be a member of the association, and as such entitled to continue to share in its earnings.   In June, 1901, he brought action against it to recover $337.50, the amount due him as one year's return upon his investment if his relations with the association remained unaffected by the notice referred to.   He recovered judgment, which the defendant now seeks to reverse.

The claim of plaintiff is that he was a stockholder in the association and that it could not, without his consent, deprive him of the continued enjoyment of the benefits of that relation.   The association claims that he was in fact not a stockholder, but a depositor, to whom it might return his money at will; or, if he was technically a stockholder, his stock was matured and his relations to the association merely that of a creditor; and that at all events the association could redeem or pay off his claim at any time.   It is true that one portion of the instrument issued to plaintiff was labeled a certificate of deposit, and the annual payment to be made him was therein referred to as interest.   But this payment, by the terms of the writing and in practice, was made to depend upon the earnings of the association and might more appropriately be called a dividend.   And it is further worthy of note, as a practical construction given to an ambiguous contract by the parties, that holders of such certificates were permitted to participate in the management of the company's business.   Moreover, the language of the other portion of the document

seems too explicit to require interpretation. It declares the holder to be the owner of a share of stock and a member of the association. This fixes his status as such, at least, unless there is some provision of the charter or by-laws which absolutely forbids such relation's being established in the manner here followed. Defendant claims to find such provision in various parts of the by-laws. Section 1 of article 5 says that each share of stock issued shall be payable in weekly instalments. Section 16 of the same article contains the words "full-paid certificates of stock shall hereafter not be issued." This section in full is as follows :

"All shares of stock that are full paid-up or become full paid-up shall be and are regarded as deposits, and the secretary is authorized and instructed to transfer the same on the book of the association from the stock to the deposit account, and full-paid certificates of stock shall hereafter not be issued. The owners of outstanding paid-up certificates of stock may exchange them for paid-up certificates of deposit, and such certificates of stock be canceled. With each paid-up certificate of stock issued there shall be issued a certificate of stock with registry fee credited thereon, and subject to the rule applied by section 15 of this article to certificates of stock issued under authority of that section."

The exact meaning of this is not clear. The by-law seems to have been adopted at the organization of the company. The reference to "shares of stock that are full paid-up," as distinguished from such as become paid up, in a by-law existing before any stock had been issued, points to an intention to issue stock of that character in the future. The word "hereafter" may be a misprint for "thereafter," just as in the last sentence the phrase "certificate of stock" where it first occurs is obviously intended for "certificate of deposit." If so, the meaning would seem to be that,

when stock became fully paid up, fully paid certificates of stock should not be issued in lieu of the original certificates, but the owners might exchange them for paid-up certificates of deposit.   However, this matter is not material.   The by-laws authorized the form of certificate that was issued to plaintiff.   Section 15 of article 5 reads :

"Certificates of deposit of $100 each, to be worth $100 when that amount has been paid in or credited to them upon the books of the association, shall be issued, and such deposits shall be redeemable by the association as provided by section 2 of this article, with interest at the rate of six per cent. per annum on the average amount paid in for the time specified, and upon deposits on hand on the 1st day of April in each year such rate per cent. of interest from date of such deposits to said April 1st shall be paid, not to exceed the rate of dividend on unloaned shares, as the board of directors shall determine.   Deposits of $13 or larger sums may be made by members of this association to begin a deposit account, which may be increased by deposits of any amount, so that the total of the amount shall not exceed $100, and such deposit shall be credited upon book accounts of the association, and upon such certificates of deposit when presented for that purpose, until the sum total of each deposit shall, unless sooner canceled by withdrawal or held by the association under sections 5 or 11 of this article, amount, with credits of accrued interest, to $100, when such deposit shall be entitled on surrender of the original certificate, if one has been issued, to a certificate of deposit of $100, the original certificate to be then cancelled.   There shall be issued in connection with each certificate of deposit a certificate of stock on which a registry fee of twenty-five cents shall be collected, but payment of instalments on such share may be suspended at option of the holder until the deposit is withdrawn or otherwise canceled, at which time the certificate of stock, unless one or more instalments have been paid thereon, shall with the

certificate of deposit be surrendered and canceled. When one or more instalments have been paid on such certificate of stock it shall immediately become subject in all respects to section 1 of this article."

It is not difficult to discover the theory and purpose of the machinery devised by this section. Evidently it was thought desirable to provide that, in addition to receiving payments upon shares by instalments, according to the usual method followed by such societies, the association might accept considerable sums of money to be invested for the benefit of the association, the payor to receive returns based upon the earnings of the entire enterprise. Because the statute (Gen. Stat. 1889, ¶ 1426) required such a corporation to conduct its business exclusively with its members, it was considered necessary that such investors be expressly declared to be members. Instead of providing in terms for a distinct class of membership, the framer of the plan reached this result by a provision that such investor, in addition to what is called a certificate of deposit, should receive a certificate of stock, on which he should be relieved from payment so long as he did not withdraw the money he had paid in. But if he withdrew the money the certificate of stock was canceled, unless he should see fit to begin the payment of instalments, which would make him a member regardless of the deposit. Either the payment of instalments or the holding of the deposit certificate was alone sufficient to make him a stockholder. It was not necessary that these conditions unite. The very purpose and the actual effect of these provisions is to declare the holder of the so-called certificate of deposit a member of the association. The two sections quoted make the rights of the holder of such a certificate the same as those of the owner of paid-up stock.

It was said in *Eversmann, Receiver, v. Schmitt,* 53 Ohio
St. 174, 184, 41 N. E. 139, 141, 29 L. R. A. 184, 53
Am. St. Rep. 632 :

"When the aggregate dues with the credited earn-
ings equal in amount the par value of a share of stock,
it is paid up, and the owner, for that share, ceases to
be a stockholder. He is entitled to the par value of
his stock, but can no longer participate in the earn-
ings of the association. His relation, then, becomes
simply that of a creditor, until he is paid."

But this is applied to an association not issuing any
paid-up stock, being preceded by the words :

"It is contrary to the purpose and genius of a build-
ing association that a share in it should be paid up at
the time of the subscription."

It frequently has been held that, in the absence of
statutory prohibition, building and loan associations
may issue paid-up stock, and that the holders are
members and not merely creditors. (*Johnson v. Na-
tional Building & Loan Association,* 125 Ala. 465, 28
South. 2, 82 Am. St. Rep. 257 ; *Coltrane v. Blake,* 51
C. C. A. 457, 113 Fed. 785 ; *Leahy v. The National
Building & Loan Association,* 100 Wis. 555, 76 N. W.
625, 69 Am. St. Rep. 945 ; *Towle v. American Building
& Loan Ass'n,* 75 Fed. C. C. 938 ; Thorn. & Black.
B. & L. Assoc. § 148.)

The inquiry remains whether the association can
at its pleasure compel such members to withdraw. It
seems obvious that this cannot be done unlesss author-
ized by some provision of the by-laws. If an authority
to this effect is needed, it may be found in *Bergman v.
St. Paul Mutual Building Association No. 1,* 29 Minn.
275, 13 N. W. 120. We discover nothing in the by-
laws as originally adopted permitting such action. In

1900 an amendment was added to section 2 of article 5, reading as follows:

"If by reason of a large accumulation of funds on hand or from any other cause it shall be deemed advisable, the board of directors shall have the right in their discretion to compel the holder of instalment or deposit shares of stock to withdraw such shares and receive the amount found to be due thereon; provided, that a written notice shall be given such shareholder at least thirty days before the time set at which such shares will be paid; and provided further, that interest on such shares shall cease at the time set for such payment."

Under color of the power assumed to be granted by this section the association notified plaintiff to withdraw his stock. Such request was not made of all members occupying the same relation to the company and no attempt was made to treat all of the members alike in the matter. Nor was an effort made to reduce the total amount of deposit stock proportionately, or upon any fixed or equal basis. But the directors designated such stockholders as they saw fit and ordered their withdrawal. The trial court found (and the finding was supported by the evidence) that plaintiff was so selected because he was a non-resident and a large stockholder. It is obvious that a by-law permitting this cannot be upheld. Plaintiff's ownership of stock vested in him a valuable right—the right to continue to share in the earnings of the enterprise—a right of which he could not be deprived by the arbitrary act of the directors or of the other stockholders. If the association, finding itself embarrassed by having on hand more funds than it could profitably invest, had adopted a plan for the retirement of stock upon some equitable basis, under which members of the same class would be given the same

treatment, a very different question would be presented. It is sufficient for the purposes of this case to say that, as applied to plaintiff, the new by-law was unreasonable and inoperative.

The judgment is affirmed.

All the Justices concurring.