THOMAS B. SCAIFE *et al* v. THE SCAMMON INVEST-
MENT AND SAVINGS ASSOCIATION.

No. 14,075. (80 Pac. 957.)

SYLLABUS BY THE COURT.

1. CORPORATIONS—*Ancillary Receiver.* A circuit court of the United States has power to appoint an ancillary receiver of assets of an insolvent corporation within its jurisdiction in aid of a primary appointment by a state court of another state. An exhibition to the federal court of the proceedings of the state court in the suit wherein the receiver was originally appointed is sufficient to authorize its action in the respect stated.

2. MORTGAGES—*Assignment by Operation of Law.* A provision in a mortgage that it shall be non-negotiable and uncollectable in the hands of any other person than the original mortgagee is not operative against an assignment effected by law or through an order of court.

3. CORPORATIONS—*Borrowing Stockholder's Liability.* A borrowing stockholder in a building and loan association that has become insolvent is not entitled to receive credit on his indebtedness to the association for the amounts paid in the purchase of stock, called dues.

Error from Cherokee district court; WILLIAM B. GLASSE, judge. Opinion filed May 6, 1905. Affirmed.

*Ira Heaton, C. B. Skidmore,* and *W. R. Cowley,* for plaintiffs in error.

*McNeill & Williams,* and *J. N. Dunbar,* for defendant in error.

The opinion of the court was delivered by

WILLIAM R. SMITH, J.: By this proceeding in error it is sought to reverse a decree of the district court foreclosing a mortgage given by plaintiffs in error on real estate in Kansas to a building and loan association incorporated under the laws of the state of Illinois. The association became insolvent, a receiver was appointed in Illinois to take charge of its prop-

erty and wind up its affairs, and an ancillary receiver was appointed by the United States circuit court for the district of Kansas. Subsequently the assets of the association in this state were sold by the receiver under orders of the courts mentioned and purchased by the Scammon Investment and Savings Association, which brought this suit.

On or about December 1, 1890, Scaife took out three shares of stock in the Interstate Building and Loan Association. On June 20, 1891, he borrowed $300 from the association, giving a note for the amount, and a real-estate mortgage to secure its payment. He paid interest on the note, premium instalments and dues on the stock to September 4, 1896, when he took more stock in the association, and borrowed $150 additional, giving a new mortgage for $450, in which his wife joined, and which was foreclosed in this suit. He also gave a note for the same amount at the same time. It was stipulated in the mortgage that Scaife should pay $3.60 each month as dues, and $2.62 each month as premium, on the shares of stock, $2.25 a month interest on the money borrowed, and also such fines as might be imposed under the by-laws. All dues, premiums and interest were paid until June, 1898, when a bill was filed in the circuit court of McLean county, Illinois, by David Mackie, jr., against the building and loan association, setting forth the insolvency of the latter, and praying for the appointment of a receiver to wind up its affairs. This suit was consolidated with another, brought by the people, on the relation of J. S. McCollough, auditor of public accounts of the state of Illinois, in which the same relief was sought. Edward Barry was appointed receiver in the consolidated suit on June 16, 1898.

At this time the assets of the association in Kansas aggregated in value about $29,000. Barry, the receiver, exhibited the proceedings had in the suits in the district court of McLean county, Illinois, to the

Honorable C. G. Foster, sitting as United States circuit judge for the district of Kansas, and obtained an order appointing him receiver of the assets of the association in this state, and later, under authority given by the United States circuit court, the Kansas assets of the association were sold to defendant in error.

The contention that there was no suit pending in the federal court when the ancillary receiver was appointed is without substance. The proceedings had in the United States circuit court for the district of Kansas were in aid of a suit in Illinois that had for its purpose the liquidation of the affairs of the association for the benefit of all persons interested in it as creditors or stockholders. In the case of *Rust v. United Water-works Co.,* 70 Fed. 129, 133, 17 C. C. A. 16, which came before the circuit court of appeals on a writ of error to the circuit court for the district of Colorado, an objection was made that the appointment of plaintiff in error as receiver of a water-works company was without force beyond the jurisdiction of the chancery court of New Jersey, which appointed him in the first instance, and hence that he was without power to sue or defend suits for that corporation in the courts of Colorado. The court, speaking through Sanborn, J., said:

"It goes without saying that the court below had the power, upon the presentation to it of the decree of the court of chancery of the state of New Jersey appointing the plaintiff in error the receiver of the property of this insolvent corporation, and the trustee for its creditors and stockholders, to appoint him a receiver and trustee, with the same powers, in the district of Colorado, and to authorize him to sue for, and to defend suits against, the water-works company in that district in the name of the corporation, or in his own name. This power was exercised in this very receivership by Judge Caldwell, in the circuit court of the United States for the district of Nebraska."

To the same effect see *Shinney v. North American*

*Savings, Loan & Building Co.,* 97 Fed. (C. C.) 9, 11, in which it was said:

"It is no unusual thing for a federal court to appoint an ancillary receiver of assets within its jurisdiction in aid of a primary appointment by a state court of another state."

In the mortgage given by plaintiffs in error this language appears:

"It is expressly agreed that this mortgage is non-negotiable, and is uncollectable in the hands of any other person than said association or its successors, or its duly authorized attorneys or agents."

An argument is made that this stipulation operates as a bar to a suit by plaintiff below, which is the assignee of the note and mortgage. This court does not think so. Title to the obligations sued on vested in defendant in error by operation of law. It was a purchaser of them at a judicial sale. Its ownership does not differ from that which it might have acquired at a sheriff's or marshal's sale in pursuance of a levy by execution. The precise point was discussed in *Spinney v. Miller,* 114 Iowa, 210, 212, 86 N. W. 317, 318, 89 Am. St. Rep. 351, and decided against the contention of plaintiffs in error. In that case it was said:

"Furthermore, it is universally held that a provision restraining the assignment of such an instrument is not operative against an assignment effected by law or through an order of court. Where it is given force, it is restricted to voluntary alienation. (4 Kent. Com. 128.)"

It was claimed in the trial court, and is asserted here, that one David Mackie, jr., was selected by the Kansas stockholders after the insolvency of the association to look after and protect their interests; that he went to Illinois as their agent, and afterward negotiated a purchase of the Kansas assets by the Scammon Investment and Savings Association, of which he was secretary and treasurer, to the detriment of plain-

tiffs in error and other stockholders and debtors similarly situated residing in this state. It is sufficient to say that this question, which was put in issue by the answer, was decided against the mortgagors by the trial court after a consideration of the oral testimony, which was conflicting. The conclusion so reached will not be disturbed here.

The principal controversy in the case relates to a refusal by the trial court to allow a credit on the note given by Scaife for monthly dues paid by him on his stock in the association. His contention is that after the association ceased to be a going concern, and was disabled from performing its part of the contract with a stockholder, the latter, who was also a debtor to it, should have credit for all moneys paid, whether as dues on stock, interest, premiums, or fines; that insolvency was no fault of one who had paid promptly all exactions up to the time the association went into the hands of a · receiver. The trial court did allow credits for interest, premiums, and fines, so that the question here relates solely to the legal right of plaintiff in error Scaife to receive credit for payments made by him as dues on the stock he held. The dues were nothing more than monthly instalments paid by members of the association for stock sold to them on credit. Some of the members borrowed money, and some did not.

Although the courts are divided, the preponderance of authority is against permitting a borrowing stockholder in a building and loan association that has become insolvent to take credit on his indebtedness to the association for dues paid in the purchase of stock. Reason also forbids the allowance of such credits. Statutes as well as rules and by-laws governing such associations in their settlements with borrowers are abrogated in cases where the associations become insolvent. (Thomp. Build. Assoc., 2d ed., § 300; *Spinney v. Miller, supra; Clarke v. Caufman,* 66 Kan. 61,

71 Pac. 241.)   The rule applicable to the present case is stated by Thompson in commenting on the rights and obligations of borrowers and stockholders in building associations that have become insolvent.   He quotes approvingly from _Strohen v. Franklin Savings & Loan Ass'n_, 115 Pa. St. 273, 279, 8 Atl. 843, 845:

"To a certain extent, it also ends the contract between it and its members respectively, and nothing remains but to wind it up in such a manner as to do equity to creditors, and between members themselves. As regards the latter, care should be taken to adjust the burdens equally, and not to throw upon either borrowers or non-borrowers more than their respective share.   That result may be reached by requiring the borrower to repay what he actually received with interest.   He would then be entitled, after the debts of the corporation are paid, to a _pro rata_ dividend with the non-borrower for what he has paid upon his stock. He will thus be obliged to bear his proper share of the losses. · To allow him to credit upon his mortgage his payments on his stock would enable him to escape responsibility for his share of the losses and throw them wholly upon the non-borrowers."   (Thomp. Build. Assoc., 2d ed., § 171, p. 338.)

In the same section the author says:

"However, the clear weight of recent authority is against allowing the dues as credits, and properly so, as such action would be an unjust preference."   (Page 344.)

In the following cases the rule approved by Thompson is adopted and applied: _Marion Trust Co. v. Trustees Edwards Lodge, etc._, 153 Ind. 96, 54 N. E. 444; _Huter v. Union Trust Co., Rec._, 153 id. 204, 54 N. E. 755; _James, Receiver, v. Sidwell et al._, 153 id. 697, 54 N. E. 752; _Towle et al. v. American Bldg., Loan & Inv. Soc._, 61 Fed. (C. C.) 446; _Sullivan v. Stucky_, 86 id. (C. C.) 491; _Brown v. Archer_, 62 Mo. App. 277; _Pioneer Savings & Loan Co. v. Brockett_, 58 Ill. App. 204; _Eversmann, Receiver, v. Schmitt_, 53 Ohio St. 174, 41 N. E. 139, 29 L. R. A. 184, 53 Am. St. Rep. 632;

*Anselme v. American Savings & Loan Ass'n,* 63 Neb. 525, 88 N. W. 665; *Weir v. Granite State Provident Association,* 56 N. J. Eq. 234, 38 Atl. 643; *Curtis v. Granite State Provident Association,* 69 Conn. 6, 36 Atl. 1023, 61 Am. St. Rep. 17; *Hale v. Cairns,* 8 N. Dak. 145, 44 L. R. A. 261, 77 N. W. 1010, 73 Am. St. Rep. 746; *Spinney v. Miller, supra.*

The adjustment of the affairs of a bankrupt building and loan association on an equitable basis requires that all stockholders—borrowing and non-borrowing —be treated alike, and it is the application of this just principle that has impelled the courts in the cases above cited to deny to a borrowing member credit for payments made in the purchase of stock, called dues.

In the cross-examination of David Mackie, jr., a witness for plaintiff, he testified that the building association issued three different kinds of paid-up stock. Counsel for plaintiffs in error then requested the court for leave to amend the answer by pleading that fact. The application was denied, and no complaint of that ruling is made in this court. Counsel proceed, however, to argue the point in their brief, contending that when such associations issue paid-up stock they are removed from the category of building and loan institutions, and become mere money-lending, dividend-paying corporations that do not benefit the saving poor but aid the rich in finding good investments for their capital. They rely on the case of *Rhodes v. Missouri Savings Co.,* 173. Ill. 621, 50 N. E. 998, 42 L. R. A. 93. In that case real estate in Illinois was mortgaged to a Missouri building and loan association by one of its stockholders, a resident of Illinois. In a suit to foreclose the mortgage it was shown that under the statutes of Missouri such associations were authorized to issue full-paid stock. It was said that the issuance of paid-up stock was not authorized by statute in Illinois, and that no rule of comity between states required that the Missouri association should stand be-

fore the Illinois courts as a building and loan association.

The statutes set out in the opinion are laws of Missouri, and on them the decision was based. In the present case it was not shown that paid-up stock was issued in the series to which Scaife subscribed. Again, counsel are persistent in the contention that this is a Kansas contract, and that Kansas laws must govern its enforcement. Much space in their brief is devoted to this question. In the case of *Loan Association v. Merriman,* 67 Kan. 779, 785, 74 Pac. 256, 258, this court said:

"It frequently has been held that, in the absence of statutory prohibition, building and loan associations may issue paid-up stock, and that the holders are members and not merely creditors."

For the several reasons stated the contention of counsel on the last point discussed is ill-founded and without merit.

We have given attention to the other claims of error, and find nothing in the record to justify a reversal of the judgment below. It is affirmed.

All the Justices concurring.