D. A. RENDLEMAN, TRUSTEE OF THE PERPETUAL BUILDING AND LOAN
ASSOCIATION, BANKRUPT, v. WILLIAM M. STOESSEL AND WIFE,
LEONIE STOESSEL.

(Filed 16 May, 1928.)

1. **Building and Loan Associations—Ultra Vires Acts—Bankruptcy—Federal Judgments—Receivers.**

In an action by the trustee in bankruptcy of a building and loan association to recover the balance due on loans, the question as to any *ultra vires* act of the association, rendering the defendant's obligation void, or as to whether the receiver could maintain his action in the courts of the State, are for the determination of the bankrupt court, and when the proceedings therein are not void upon their face, they will be followed in the State court.

2. **Building and Loan Associations—Relationship of Borrower and Stockholder—Receivers—Bankruptcy.**

Where the borrower from a building and loan association takes out stock, to pay at maturity the debt secured by a mortgage on his building, he occupies, upon the bankruptcy of the association in the hands of a receiver in bankruptcy, two independent relations to the association; that of stockholder, and that of debtor to the association, and he is not entitled to have his payments made on his shares of stock credited to his debt, *as against the claims of the other creditors.* C. S., 5180, 5183.

APPEAL by defendants from *Finley, J.,* at November Term, 1927, of ROWAN.

The case was heard on an agreed statement of facts, a summary of which follows:

On 16 September, 1921, the defendants borrowed $1,600 from the Perpetual Building and Loan Association, delivering to said Building and Loan Association a note for $1,600 and a deed of trust securing the note. At the same time and as part of the same transaction, the defendants subscribed to sixteen shares in series 69 and 72 of said Building and Loan Association, agreeing to pay 25 cents per share weekly until the series reached the par value of $100 per share, when defendants agreed to repay said loan, hypothecating the stock as security for the loan. On 1 March, 1926, by mutual consent, the 16 shares in series 69 and 72 of said stock were canceled, defendants made a payment of $200 on the note, and defendants subscribed to 14 shares in series 81 of such stock, substituting and hypothecating said fourteen shares with plaintiff company under the same terms and conditions as the sixteen shares were formerly held. The interest on the note is paid to 1 September, 1926. $91.00 in installments has been paid on the fourteen shares of stock in series 81. On 31 August, 1926, a receiver was appointed for the insolvent Building and Loan Association, and on 7 January, 1927, the association was adjudicated a bankrupt and plain-

tiff was appointed trustee. Plaintiff, in his capacity as trustee, has possession of the note and mortgage. Defendants have tendered the full amount of the principal and interest due on the note, except $91, which defendants claim as a credit upon said note.

A judgment was signed in the court below, adjudging that defendants are not entitled to credits upon the note for stock payments of $91.00; that plaintiffs recover of defendants the sum of $1,400, together with interest thereon from 1 September, 1926; and that the trustee in the deed of trust be authorized to sell same in accordance with the terms and provisions thereof.

Defendants excepted and appealed.

*Rendleman & Rendleman, John M. Robinson and S. E. Vest* for plaintiff.

*T. G. Furr* for defendant.

*J. A. Lockhart and H. L. Taylor* filed a brief as amici curiæ.

ADAMS, J. We find nothing in the record to impeach the good faith of the parties in seeking an adjudication of the matters in controversy. The brief filed by the *amici curiæ* raises a question as to the validity of the proceedings in bankruptcy and the right of the plaintiff to maintain the action. On 7 January, 1927, the Perpetual Building and Loan Association was adjudged a bankrupt by the District Court of the United States for the Western District of North Carolina, and on 28 March, 1927, D. A. Rendleman was elected trustee. Unless the proceeding is void (and this we cannot hold upon the record before us), the question must be left to determination upon the motion now pending in the District Court. The position that the notes payable and the paid-up stock are void as obligations because *ultra vires* is properly determinable by the referee in bankruptcy, whose duty it is to allow or disallow claims of creditors who assert a right to share in dividends. 2 Remington on Bankruptcy, sec. 611; Bankruptcy Act, secs. 38, 39. We are of opinion that neither this question nor that of the basis on which the final settlement shall be made is necessarily involved in the present appeal. The only assignment of error appearing in the record is an exception to the judgment. The crucial point is whether the defendants, who are subscribers to stock in the bankrupt association and borrowers therefrom to the amount of the stock subscribed, may have the payments which they have made on their stock deducted from the amount borrowed, in an action brought by the trustee to recover judgment on a note given for the loan and to foreclose a deed of trust by which the loan is secured.

It will be noted that the defendants contend that their note should be credited with sums which were paid upon their subscription for

41—195

stock. In their relation to the association they occupied the two independent capacities of shareholder and debtor. This dual relation is one of the determining factors in the solution of the controversy. It is provided by statute that all serial shareholders of the serial plan shall occupy the same relative position as to debts, losses, and profits, and that upon settlement a borrowing member shall be credited with only the withdrawal value of his shares as fixed by the charter, by-laws, or directors of the association. C. S., 5180, 5183.

In *Meares v. Davis,* 121 N. C., 126, the defendants, borrowing stockholders in an insolvent association, moved the court for an order to require the receivers to pay them $382.27, proceeds derived from a sale of their property. It was admitted that this sum was their *pro rata* proportion of the deficiency of the defaulting association; and upon these facts it was held that to grant the order asked for would be to relieve the defendants from the burden of the defalcation at the expense of their associate corporators. Also in *Williams v. Maxwell,* 123 N. C., 586, it was said that the *pro rata* part of the loss of an insolvent association was to be deducted from payments made by a borrowing member. The principle was adhered to in *Meares v. Development Co.,* 126 N. C., 662, the Court reiterating the conclusion announced in other cases that a stockholder would be made to account for the proportionate part of the loss resulting from the insolvency of the corporation. Several of the cases are reviewed in an opinion written for the Court by *Chief Justice Clark* in *Building & Loan Association v. Blalock,* 160 N. C., 490, in which he said: "The defendant being a corporator, the money he has paid must first be credited in discharge of his *pro rata* share of the losses of the concern just as, in a contrary event, he would have been credited with his share of the profits, and after payment of such losses the mortgaged property as well as himself is liable for the assessments necessary to mature his stock." Payments on stock were not payments on the note, and upon the facts agreed they did not operate as a *pro tanto* extinguishment of the mortgage. See *Coltrane v. Blake,* 113 Fed., 785. Judgment

Affirmed.