No. 35,846

SAM H. SCHAEFER, *Appellee,* v. A. MILNER, *Appellant,* and W. M. LEWIS, *Appellee,* CYRUS HACKSTAFF, Intervenor, as Primary Receiver, *Appellant.*

(137 P. 2d 156)

Opinion filed May 8, 1943.

*Mark H. Adams,* of Wichita, argued the cause, and *Charles E. Jones, J. Ashford Manka,* both of Wichita, *Frederick E. Dickerson, Thomas J. Morrissey, Charles D. Bromley* and *Anthony F. Zarlengo,* all of Denver, Colo., were on the briefs for appellant Cyrus Hackstaff; *C. H. Brooks, Howard T. Fleeson, Wayne Coulson, Paul R. Kitch,* all of Wichita, *Paul W. Lee, George H. Shaw, Donald C. McCreery* and *William A. Bryans, III,* all of Denver, Colo., were on the briefs for appellant A. Milner.

*Henry E. Martz* and *Austin M. Cowan,* both of Wichita, argued the cause, and *Fred W. Aley,* of Wichita, was on briefs for appellee Sam H. Schaefer; *C. A. McCorkle, W. A. Kahrs, Robert H. Nelson* and *Henry L. Butler,* all of Wichita, were on the briefs for appellee W. M. Lewis.

The opinion of the court was delivered by

HOCH, J.: This was an action for dissolution of a partnership, an accounting and appointment of a receiver. A receiver was appointed to take charge of certain partnership properties in Kansas. The appellant contends — and this contention raises the primary issue presented — that under the law and in recognition of comity the Kansas receivership should have been made ancillary to that of the receiver appointed in an action previously instituted in Colorado.

Milner, Schaefer and Lewis, all nonresidents of Kansas, were partners engaged in a real-estate business in Colorado, Kansas, and several other states, under the firm name of the Milner Company, or the Milner-Schaefer Company. On May 28, 1942, Milner filed an action in Colorado asking for an accounting, a dissolution of the partnership, and for the appointment of a receiver. The action was broad in character, relating to partnership property wherever located. Personal service was had upon Schaefer and Lewis, the other two partners, and they entered appearances on July 25 and July 28, respectively.

On August 28, 1942, Schaefer began an action in Sedgwick county, Kansas, asking for an accounting, dissolution, the appointment of a receiver *pendente lite* and that "the interests of the partners be partitioned." Appellant asserts that this was just four days after Milner had filed a second and separate application for the appointment of a receiver in the Colorado action. The record here, however, does not show this separate application, and we predicate nothing upon it. In any event it is not denied that the appointment of a receiver had been prayed for in the original petition filed

in Colorado in May, 1942. In the instant petition, filed by Schaefer on August 28, no reference was made to the action then pending in Colorado and there was no reference to any property belonging to the partnership except that in Sedgwick county. On the same day, August 28, upon motion by the plaintiff, Tom Kornhaus was named receiver "to manage the properties owned by the partners in Sedgwick county, Kansas, and to collect the rents." His bond was fixed at $2,000. The proceedings were *ex parte,* there being no praecipe for summons, no summons, no entry of appearance by the other parties, and no affidavit then filed to obtain service by publication.

On September 2, 1942, the Colorado court, acting upon the application then pending, appointed Cyrus Hackstaff as receiver for all the partnership properties. All partners were represented by counsel and the record does not disclose that any of them objected to the appointment or to any of the provisions of the order of appointment. The order clothed the receiver with broad powers, pertinent provisions being as follows:

"1. That Cyrus A. Hackstaff is hereby appointed receiver and invested with all the powers of a receiver in equity of all the property, records and effects, including cash, mortgages and other securities, bills receivable, real property and choses in action of the Milner Company, a co-partnership, wherever the same may be situated, and is hereby directed forthwith *to take possession thereof and preserve, manage, operate and use the same and to conduct the business of the said co-partnership* according to law and in accordance with the principles, rules and practice in cases of this character. He is authorized and directed *'to collect all monies due and all monies to become due to said co-partnership, to institute and prosecute such suits in his own name, as receiver, or in the name of the said co-partners, as may be necessary and proper, and to defend suits as may be brought against him as such receiver,* which affect or may affect the property of which he is now or may become receiver. He is further authorized to collect and receipt for installment payments from purchasers of real estate under contract with said co-partnership and *to transfer assets of whatever kind or nature of said partnership located within or without the state of Colorado necessary in the usual course of business* and agreeable to the laws of the state of Colorado, and of such other assets where any property of said co-partnership may be located.

"2. It is hereby ordered that all persons, firms and corporations in possession of any of the property, of which the receiver is hereby appointed, forthwith deliver the same to him or his representatives or agents.

. . . . . . . . . . . . . . . .

"4. *The receiver is further authorized and empowered to apply to any court of competent jurisdiction in any state other than the state of Colorado, wherein any property of said co-partnership is situated, for the appointment of an*

*ancillary receiver* to do and perform such acts, as ancillary receiver, as may be necessary and proper *and agreeable to the laws of such other state, or states.*

"5. The receiver shall keep accurate account of his receipts and disbursements, take proper vouchers for his disbursements and file with the clerk of this court monthly reports of his receipts and disbursements. He shall file with the clerk of this court an inventory of the properties coming into his possession as soon as the same may be conveniently prepared.

.    .    .    .    .    .    .    .    .    .    .    .    .    .    .    .

"7. The plaintiff and the receiver may apply to any court of competent jurisdiction in this state, or elsewhere, for such order, or orders, in the premises as they may deem necessary in aid of the orders issued by this court."

Hackstaff, the Colorado receiver, was required to give bond for $25,000.

On September 2, 1942, affidavit for publication service upon Milner was filed in Sedgwick county and the first publication made on September 3, answer date being fixed for October 16, 1942. On September 3, 1942, Lewis entered voluntary appearance in the Sedgwick county action.

On September 16, 1942, an *ex parte* order was made in the Sedgwick county action amending the receivership order of August 28, the pertinent provisions of the amended order being as follows:

"It is therefore considered, ordered and adjudged that Tom Kornhaus, the receiver herein, be invested with all the powers of a receiver in equity over all the property, records and effects, including cash, mortgages and other securities, bills receivable, real property and choses in action of the Milner company, a co-partnership, *wherever the same may be situated in the state of Kansas and more particularly in Reno and Sedgwick county,* and the said receiver is hereby directed forthwith to take possession thereof and preserve, manage, operate and use the same, and to conduct the business of the said co-partnership according to law and in accordance with the principles, rules and practice in cases character. The receiver is further authorized and directed to collect all moneys due and all moneys to become due to said co-partnership, to bring and defend actions in his own name and to collect and receipt for installment payments from purchasers of real estate under contract with said co-partnership within the State of Kansas in the usual course of business."

On October 6, 1942, Hackstaff, the Colorado receiver, asked to intervene and without objection was permitted to intervene in the Sedgwick county action. On October 9 he filed his intervening petition, in which he set out fully the record of the proceedings theretofore had in Colorado, and asked:

"(a) That the court set aside and hold for naught its order under date of August 28, 1942, purporting to appoint Tom Kornhaus as receiver for Milner Company, a co-partnership, and that the said Tom Kornhaus be discharged as such receiver;

"(b) That the court *enter an order appointing your petitioner, or some other suitable person, as ancillary receiver* in the State of Kansas for the property and assets of Milner Company, a co-partnership;

"(c) That the court enter an order recognizing your petitioner as the duly appointed, qualified and acting primary receiver of the property and assets of said Milner Company, a co-partnership, by virtue of the order and judgment of the district court in and for the city and county of Denver and State of Colorado in Case No. A-34163, and that said court be recognized as having full jurisdiction of all matters relating to the accounting, distribution of the partnership property and assets and the rights of the respective partners thereto, *except such matters as may be ancillary thereto and subject to the jurisdiction of this court."* (Italics supplied.)

On October 10, 1942, Milner filed an answer to the petition in the Sedgwick county action, adopting the allegations of Hackstaff's intervening petition and asking for "the appointment of a receiver ancillary to such principal receiver."

On October 20, 1942, Kornhaus, the Kansas receiver, filed an answer to the intervening petition of Hackstaff, the Colorado receiver, in which he denied that it was to the best interests of the principal partners to the action that an ancillary receiver be appointed, denied that the Colorado court had primary jurisdiction, asserted the Kansas court to be the court of primary jurisdiction and the proper court to determine the rights of the parties in the property "within the state of Kansas" and the proper court "to wind up the affairs of said co-partnership insofar as its property within the state of Kansas is concerned," and that "an orderly liquidation can be had in this court to better advantage than such liquidation can be had under the jurisdiction" of the Colorado court. He further alleged that his appointment as receiver antedated that of Hackstaff, and that there were numerous purchasers of lots in Sedgwick county who had bought under contract and were entitled to deeds as soon as their payments had been completed and that their rights should be protected by this court and by a receiver acting under the orders of this court. He further asserted that Hackstaff had no right to the appointment of an ancillary receiver as a matter of comity for the reason that "the state of Colorado has denied and does deny comity in such cases to receivers appointed" in foreign jurisdictions.

Hackstaff's reply to the answer of Kornhaus need be noted only briefly. In it he admitted that there were Kansas purchasers of lots entitled to deeds as payments are completed and that they should be protected by a receiver acting under the orders of the Kansas

court, but asserted that such receiver should be an ancillary receiver. He denied that Colorado denied comity in such cases.

Lewis filed an answer to the Schaefer petition admitting the allegations therein and averring 'that the partnership had no outstanding indebtedness "except current bills which the income of said partnership is more than ample to pay," and asked that Kornhaus continue as receiver.

Trial was had on the intervening petition of Hackstaff on December 10, 1942, and the only testimony brought here is that of Kornhaus, the Kansas receiver. He testified that he was a very close friend of Schaefer, that he had been in Wichita since 1932 with the exception of the year 1937, when he worked for the company in Denver, that he had collected for the company and had made his reports to Denver where all of the records of the Wichita division were kept, that he thought the principal office was at San Antonio, that on several occasions when he did not know how to proceed he had called the Denver office for instructions and had ordered deeds from there, that he was a good friend to Lewis and Milner and did not think he was inclined to be more partial to Schaefer, and that there then were three or four hundred persons making payments each week. Other parts of his testimony need not be recited. On the same day, December 10, 1942, the court denied the Milner application, held that the appointment of Kornhaus on August 28, 1942, was "valid and subsisting," refused to name him or any other person as an ancillary receiver, and found "that there are Kansas creditors whose interests will be jeopardized unless this court continues to act as a court of primary jurisdiction, and the court further finds that this is not a case in which the doctrine of comity should be applied." From that order this appeal was taken.

We first note briefly appellant's contention that the *ex parte* order of August 28, 1942, naming Kornhaus receiver was void for the reason that it was made before the action had been "commenced" under the statute. Attention is called by appellant to G. S. 1935, 60-1208, which provides that "whenever an *ex parte* application is made by a plaintiff in a civil action to any court or judge thereof, *at or after the commencement of said action,* for the appointment of a receiver therein the court or judge to whom said application is made may require . . . an undertaking with sufficient sureties," etc. (italics supplied). He makes the point that where service is by publication the action is deemed "commenced" on the date of the

first publication (G. S. 1935, 60-308) and that the first date of publication was on September 3, five days after the receiver was appointed. In answer to this contention the appellee calls attention to the latter part of 60-308, *supra,* reading:

"An attempt to commence an action shall be deemed equivalent to the commencement thereof within the meaning of this article when the party faithfully, properly and diligently endeavors to procure a service; but such attempt must be followed by the first publication or service of the summons within sixty days."

He cites a number of decisions in support of the proposition that the service by publication relates back to the day of the filing of the petition, where the first publication is made within sixty days thereafter. (*Allis-Chalmers Mfg. Co. v. Lewelling,* 141 Kan. 350, 354, 41 P. 2d 1032, and cases there cited.)

In view of the conclusions hereinafter stated on the more substantive issue we need not undertake the rather extended analysis of the facts and the cases that would be required for proper treatment and determination of this procedural question. For present purposes we shall assume that when the Kornhaus appointment was made the action had been "commenced."

The broad aspects of the situation here presented are clear. All three partners seek to dissolve the partnership and wind up its affairs. That is the primary purpose of the litigation. All parties agree that a receiver should be appointed. Though important, the receivership is incidental to the accomplishment of the purpose and ultimate result sought. The petition filed in Colorado in May, 1942, was broad in character and included prayer for the appointment of a receiver. As heretofore noted, personal service was had upon Schaefer and Lewis and both entered formal appearance in the action in July. The Colorado court had acquired jurisdiction, both of subject matter and of the parties. In spite of the fact that Schaefer and Lewis were then parties to the action pending in Colorado, Schaefer filed a petition in Sedgwick county asking for dissolution, accounting and appointment of a receiver. Neither in the petition nor otherwise, as far as the record discloses, was the Kansas court advised of the pendency of the Colorado action, and the same day the petition was filed an *ex parte* order was secured naming Kornhaus receiver of the properties in Sedgwick county. No personal service had been sought upon the defendants and no affidavit for service by publication filed.

The general rule is well established that when a court of competent jurisdiction acquires jurisdiction of the subject matter its authority continues until the matter is finally disposed of, and that no court of coördinate authority should interfere with its action. (14 Am. Jur., 435; 15 C. J. 1134-1136; 21 C. J. S. 745-748.) As said in 15 C. J., 1135, "This rule rests upon comity and the necessity of avoiding conflict in the execution of judgments by independent courts, and is a necessary one because any other rule would unavoidably lead to perpetual collision and be productive of most calamitous results." As stated in American Jurisprudence, *supra,* "the principle is essential to the proper and orderly administration of the laws; and while its observance might be required on the grounds of judicial comity and courtesy, it does not rest upon such considerations exclusively, but is enforced to prevent unseemly, expensive, and dangerous conflicts of jurisdiction and of process." (p. 436.)

This general rule is applicable not only as between courts of coordinate jurisdiction within the same state but between federal courts and state courts (Note to *Louisville Trust Co. v. City of Cincinnati,* 22 C. C. A. 358) and between state courts of different states (*Lively v. Picton,* 218 Fed. 401). It has even been held that as between two courts of concurrent jurisdiction a court of equity which has acquired jurisdiction of a controversy and of the parties may restrain the prosecution of the case in another and foreign jurisdiction. (*Prudential Ins. Co. v. Merritt-Chapman & Scott Corp.,* 112 N. J. Eq., 179.)

In *Grey v. Independent Order of Foresters* (Mo. App.), 196 S. W. 779, which involved the retention of jurisdiction by a court of Missouri as against a later action instituted in Canada, it was held that "in order to do full justice a court of equity may restrain a party from instituting or continuing a suit at law involving the same subject matter, whether such suit is begun in a domestic or foreign jurisdiction." (See, also, *Farmers' Loan, &c., Co. v. Lake St. Rd. Co.,* 177 U. S. 51.)

Many other cases of like tenor might be cited. However, no attempt is here made by one court to interfere with action in the other court. On the contrary, the Colorado receiver was specifically authorized to seek appointment as ancillary receiver in other states where partnership property existed.

Appellee urges that on the question of priority of jurisdiction the date of the appointment of the receiver is controlling rather than

the date of the filing of the action. Accordingly he stresses the fact that the Kansas receiver was appointed a few days before the appointment of the Colorado receiver. It is true that some courts hold that the appointment of the receiver determines the priority. (45 Am. Jur. 137.) On the other hand, many courts hold, and we think more logically, that the commencement of the action determines priority (45 Am. Jur. 138). Clearly it is the general rule that where two suits are commenced in different courts and the subject of the action and the parties are the same in each, the court which first acquires jurisdiction should dispose of the whole matter, and that this rule is applicable to suits wherein the appointment of a receiver is sought. (Restatement, Conflict of Laws, § 526, pp. 634-636; 53 C. J. 50.) In 45 Am. Jur. 138, it is said:

"At least, as between the immediate parties, jurisdiction must be regarded as attaching when the bill is filed and process has issued, where the process is subsequently duly served, and the defendants cannot defeat jurisdiction thus acquired by bringing suit in another court and procuring an *ex parte* injunction seeking to restrain the service already issued."

In *Empire Trust Co. v. Brooks,* 232 Fed. 641, which involved receivership of property, it was said:

"Where the issues in the two suits are the same, and their subject matter substantially identical, comity and the orderly admisistration of justice, and the desire to avoid a conflict of jurisdiction, require of the court that last acquires jurisdiction, though it be the first to acquire possession of the property involved in the litigation, that it surrender such possession, on application, to the court of concurrent jurisdiction which first acquired jurisdiction of the controversy." (p. 645.)

This question of priority was clearly passed upon by this court in the case of *Bridgeport Machine Co. v. Arthur A. Beard, Inc.,* 135 Kan. 711, 11 P. 2d 990, wherein it was held that:

"Where a suit has been filed in a district court of competent jurisdiction praying for the appointment of a receiver, jurisdiction of that court begins with the filing of the petition, and from that time on no other court has jurisdiction over these parties and this property to entertain application for the appointment of receivers or for any other purpose." (Syl. ¶ 2.)

It is true that the Bridgeport case was between two courts of this state, but the theory and reasoning are equally applicable as between courts of competent jurisdiction of different states. It should be noted furthermore—even aside from the general rule of priority adopted by our decisions—that the appointment of the Kansas receiver on August 28, 1942, was extremely narrow in its terms. The

receiver was appointed at that time simply to take charge *of the properties in Sedgwick county* and collect the rents therefrom and was in no way charged otherwise with duties in connection with partnership affairs. The subsequent amendment of the order of appointment—which was some days after the Colorado receiver had been appointed—extended his control to all the properties in Kansas. The limited nature of his responsibilities is further indicated by the fact that his bond was fixed at only $2,000. On the other hand, the Colorado receiver was given plenary powers—as shown by previous recital herein—and was bonded for $25,000.

In the case of *Hepner v. Hepner,* 115 Kan. 647, 223 Pac. 1095, the wife brought an action against her husband for alimony and while the action was pending he established a residence in Oklahoma and there secured a divorce from her, service being by publication. In the alimony action in this state he subsequently set up the Oklahoma decree of divorce as a bar to the action on the ground that the plaintiff was no longer his wife and consequently no alimony could be awarded against him. We held that since the Kansas court had acquired prior jurisdiction of the parties and the subject matter, nothing thereafter done in Oklahoma could strip the Kansas court of jurisdiction. It was said in the opinion:

"This is an elementary rule of comity between courts. But the rule is more than one of mere comity. It is one of fundamental necessity to the dignified and orderly administration of justice and to prevent a collision of authority between courts, with all the unseemly consequences bound to flow therefrom,"—

citing various prior Kansas decisions. (See, also, *Watts v. Watts,* 151 Kan. 125, 131, 98 P. 2d 125.)

In *Winans v. Manufacturing Co.,* 48 Kan. 777, it was held that while a foreign receiver has no extra-territorial rights, he should be permitted to institute action in this state as a matter of comity. As directly in point or having a bearing upon the questions of priority and comity see, also, *Scaipe v. Savings Association,* 71 Kan. 402, 80 Pac. 957; *Bank Savings Life Ins. Co. v. Schroll,* 141 Kan. 442, 41 P. 2d 731; *McKinney v. Landon,* 209 Fed. 300.

Appellee stresses the case of *Merritt v. American Steel Barge Co.,* 79 Fed. 228, 232, 234, in support of the proposition that two actions in personam involving the same subject matter may be carried on in different jurisdictions at the same time, but this is what is said in the opinion in that case:

"If the prior action does not deal either actually or potentially with specific property or objects, but is strictly a suit in personam, in which nothing more than a personal judgment is sought, no reason is perceived why a subsequent action may not be brought and maintained in another jurisdiction, although it involves the determination of the same issue or issues on which the right to recover in the first suit depends." (p. 232.)

The instant action is not entirely one in personam but affects many properties belonging to the partnership. In any event the case does not disturb the general doctrine of comity.

It is further contended that the Colorado receiver is not entitled to the appointment of an ancillary receiver in this state as a matter of comity, for the reason that Colorado denies comity in such cases to receivers appointed by foreign jurisdictions. The case of *Fowler v. Osgood,* (C. C. A.) 141 Fed. 20, is cited in support of this proposition, but we do not find it persuasive to that effect. The case holds that the receiver of an insolvent corporation has no inherent power to sue in a foreign jurisdiction even though a local court gives him permission to do so. In effect the case merely emphasizes the necessity of an ancillary receiver. In other words, as to property within a state the receiver must act under the order of the local court and this he does as an ancillary receiver there appointed. That Colorado does recognize comity is indicated in the case of *Mosko v. Mathews,* 87 Col. 55, 284 Pac. 1021. It is true that it is said in the opinion (¶ 5, p. 59) that comity is not to be enforced where such enforcement will do injustice to local citizens. That rule is not here controverted.

In support of comity by Colorado see, also, *Seested v. Bonfils,* 33 F. 2d, 185.

What has been said herein is in no way in conflict with the principle that real estate is subject only to the jurisdiction of the courts of the *situs.* Appellant is not here seeking to subject Kansas real estate to the orders of the Colorado court. He seeks merely to have a suitable person named as ancillary receiver who will be subject to the orders of the Kansas court in matters directly affecting the Kansas realty.

We have not failed to note the finding of the Sedgwick county court that "there are Kansas creditors whose interests will be jeopardized unless this court continues to act as a court of primary jurisdiction." We find, however, absolutely no evidence to support that finding. On the contrary, the only reference to creditors we find is the averment in the answer of Lewis, one of the appellees, that "said

partnership has no outstanding indebtedness, except current bills which the income of said partnership is more than ample to pay."

It is clear upon this whole record that the Colorado court had acquired jurisdiction of the subject matter and of the parties; that the receiver there named should be deemed the primary receiver, and that the rule of comity requires that the Kansas receivership should be ancillary to the Colorado receivership in order that the winding up of the partnership affairs may be carried out in an orderly manner. Furthermore, we cannot give countenance to the action of Schaefer, appellee, in which he was obviously supported by his copartner Lewis, in filing an action in the Kansas court and securing the same day an *ex parte* order without advising that court of the pendency of a similar action in Colorado in which he had entered appearance. We think it was clearly the duty of the court below, when the facts were shown in appropriate pleadings, to set aside the *ex parte* order of appointment and to name some suitable person—whether that person be Hackstaff, Kornhaus, or someone else—as ancillary receiver.

The judgment is reversed, with directions to proceed in conformity with this opinion.