No. 37,835

SAM H. SCHAEFER, *Appellee and Cross-Appellant,* v. A. MILNER, *Appellant and Cross-Appellee,* and W. M. LEWIS (revived as to W. M. Lewis in the name of TOM KORNHAUS as administrator with the will annexed of the estate of Waldo M. Lewis, deceased, *Appellee and Cross-Appellant*).

(219 P. 2d 663)

Opinion filed June 10, 1950.

*Paul R. Kitch,* of Wichita, argued the cause, and *Howard T. Fleeson, Homer V. Gooing, Wayne Coulson, Dale M. Stucky* and *Donald R. Newkirk,* all of Wichita, were with him on the briefs for the appellant and cross-appellee.

*Allen A. Schaefer,* of Denver, Colorado, and *Henry E. Martz,* of Wichita, argued the cause, and *Fred W. Aley, Wm. A. Kahrs,* and *Robert H. Nelson,* all of Wichita, were with them on the briefs for the appellees and cross-appellants.

The opinion of the court was delivered by

HARVEY, C. J.: This was an action to dissolve a partnership, for an accounting, and the appointment of a receiver. The appeal is from the final order and judgment.

In the petition, filed August 28, 1942, in the district court of Sedgwick county, A. Milner and W. M. Lewis were named as defendants. Since then Lewis has died and the action as to him has been revived in the name of his personal representative. It was alleged the parties were residents of Texas and were copartners engaged in the real estate brokerage business under the name of The Milner Company, also sometimes known as The Milner-Schaefer Company; that the partners owned large interests in real estate in Kansas, particularly Sedgwick county, which was being sold on small weekly or monthly payments; that the partners were in disagreement to the extent the business could not be successfully carried on. Plaintiff prayed that the partnership be dissolved; that an accounting be had; that the interests of the partners be partitioned, and that a receiver be appointed pending the action. On the same day, on plaintiff's *ex parte* application, Tom Kornhaus was appointed receiver pending the determination of the action, with authority to manage the property owned by the partners in Sedgwick county and to collect the rents. His bond was fixed at the sum of $2,000, which was filed and approved on September 3. On September 16 plaintiff applied, *ex parte*, to amend the order appointing the receiver, and it was amended by including the partnership property in Reno county, and the receiver was given more specific directions concerning his duties.

On October 9, 1942, Cyrus Hackstaff, as the primary receiver, filed an intervening petition, in which he alleged that on May 28, 1942, Milner (the defendant herein) filed an action in the district court of the city and county of Denver, Colorado, against Schaefer and Lewis (the other party to this action) for the dissolution of the partnership of The Milner Company, for an accounting, and for a receiver; that the principal business of The Milner Company partnership was the subdivision of tracts of real property and the sale of lots and tracts therein under contracts of sale in the states of Colorado, Texas, Kansas, Arizona and Ohio, and that the principal office of The Milner Company was in Denver; that Schaefer and Lewis, the defendants in that action and parties to this action, duly entered their appearances in that action, one of them

on July 25 and the other on July 28, 1942, and that on September 2, 1942, the intervening petitioner was appointed as receiver for The Milner Company; that he duly qualified and that at all times since has been so acting. The petition contained other pertinent allegations, which need not be specified. The prayer of the intervening petitioner was that the court set aside its order of August 28, 1942, purporting to appoint Tom Kornhaus as receiver for The Milner Company and that he be discharged as such receiver; that the court make an order appointing the intervening petitioner, or some other suitable person, as ancillary receiver in Kansas for the property of The Milner Company and recognizing the intervenor as the duly appointed, qualified and acting primary receiver of the property and assets of The Milner Company and the rights of the respective parties thereto, except such matters as may be ancillary thereto and subject to the jurisdiction of the court in this action. On October 10, 1942, Milner filed an answer admitting some of the allegations of plaintiff's petition and denying others and otherwise making as a part of his answer the intervening petition of Cyrus Hackstaff as principal receiver, and prayed for the appointment of a receiver ancillary to the principal receiver, and for such other and further relief as he might be entitled to. On November 19, 1942, Lewis filed an answer in which he admitted the allegations made in plaintiff's petition; alleged that the interests of the partners in the business and assets of the partnership are equal, each entitled to one-third; that the partnership has no outstanding indebtedness except the current bills, which the income of the partnership is more than ample to pay; that he desired an immediate hearing of the cause and final disposition thereof, and prayed that the receiver appointed continue to act as such receiver until the final disposition of the case; that the partnership be dissolved, and that the interests of the partners be partitioned.

Schaefer and Lewis opposed the application of Cyrus Hackstaff to intervene and be recognized as a primary receiver, and upon a hearing the court denied the request of the intervenor. An appeal was taken from that order by Milner and by the intervenor and this court reversed the decision of the lower court (see *Schaefer v. Milner*, 156 Kan. 768, 779, 137 P. 2d 156), and remanded the case with directions for the trial court to set aside its *ex parte* order of the appointment of Tom Kornhaus as receiver "and to name some suitable person—whether t h a t person be Hackstaff, Kornhaus, or

someone else—as ancillary receiver." Apparently the mandate of the court was carried out and Tom Kornhaus was appointed ancillary receiver for the properties of the partnership situated in Sedgwick and Reno counties. The record does show that Kornhaus, as ancillary receiver, collected payments due under the contract for the sale of real property in Kansas and performed other duties in connection with the business of The Milner Company in this state and made reports to the district court of Sedgwick county. There is no indication, however, in this record that he made any reports to Hackstaff, the primary receiver, in Denver. Kornhaus, as ancillary receiver, on April 1, 1943, filed an inventory which listed numerous lots owned by the partnership in five named additions to Wichita in Sedgwick county and in two named additions to Hutchinson in Reno county. On March 25, 1944, Kornhaus, as ancillary receiver, filed a report and an itemized account showing receipts and disbursements to January 31, 1944, with a balance on hand as of that date of $40,029.32. On August 16, 1944, upon the motion of the plaintiff Schaefer to disburse funds in the hands of Kornhaus, as ancillary receiver, and after a hearing, at which the plaintiff Schaefer and the primary receiver Hackstaff appeared by counsel (attorneys for none of the other parties appearing), the court made an order directing Kornhaus, as ancillary receiver, to pay the court costs to date in the sum of $118.46 and to issue a check payable to the plaintiff, Sam H. Schaefer, in the sum of $27,048.50 and to issue a check in the same amount payable to W. J. Lewis, one of the defendants herein.

On December 3, 1948, plaintiff filed a supplemental petition in which he alleged that heretofore a partnership existed between plaintiffs, Lewis and Milner, in which each had an equal interest, which partnership was dissolved May 28, 1942, by the withdrawal of Milner; that this action was brought for the partition of the partnership assets in Kansas; that Tom Kornhaus was appointed receiver of such assets, and has been so acting under the direction of the court; that the defendant Milner brought an action for the dissolution of the partnership in the district court of the city and county of Denver, Colorado, in which a receiver was appointed, and the receiver appointed in Kansas has been held to be ancillary to the receiver appointed in Colorado; that on January 21, 1944, plaintiff Lewis, and Milner, entered into an agreement for the partition of all the assets of the partnership and for the settlement of their partnership affairs insofar as Milner was interested and concerned; that under

the terms of the agreement and the judgment of the Colorado court the Kansas property—except the Reno county real estate—was to go to Schaefer and Lewis, including the cash on hand and thereafter received in the Kansas receivership; that on January 21, 1944, the Colorado court entered a final judgment requiring the parties to comply with this agreement, upon which a copy of the judgment had been entered, and that on June 21, 1946, the court, having ordered Milner to sign certain documents, to carry out the agreement and judgment, found Milner guilty of contempt; that in the district court of Bexar County, Texas, sitting at San Antonio, in an appropriate proceedings, appointed a receiver for the partnership property in Texas and thereafter enforced the agreement and judgment of the Colorado court insofar as it affected the partnership assets in Texas, which judgment was affirmed by the Texas civil court of appeals, and the supreme court of Texas denied Milner a writ of error. Plaintiff prayed for an order authorizing and directing the receiver to convey the Reno county real estate to Milner; that the action be dismissed as to Milner, with prejudice, and that all the costs and expenses of the receivership incurred herein be taxed against the defendant Milner and decreed to be a lien upon the Reno county real estate. Attached to and made a part of this motion and supplemental petition was a copy of the agreement of January 21, 1944, made and filed in the case in the Colorado court, which reads:

"AGREEMENT

"The undersigned hereby agrees to enter into a contract in settlement of all controversies among themselves, embodying the terms as set forth in the Memorandum re Contemplated Milner-Schaefer-Lewis Settlement, dated January 21, 1944, attached hereto and by such reference incorporated herein.

"The undersigned further agree that such Agreement shall, at the request of any party, be incorporated in an appropriate decree by any of the courts wherein the said properties and business of the parties are now in receivership.

"IN WITNESS WHEREOF, the parties hereto have hereunto subscribed their names at Denver, Colorado, this 21st day of January, 1944."

This was signed by A. Milner, W. M. Lewis, Sam H. Schaefer, and the signature of each of the parties was witnessed by his attorney.

Following the signatures, and upon the same sheet of paper, the following was written:

"1-21-44

"The written stipulation and agreement of all the parties hereto being now presented to the Court for approval. It is Ordered by the Court that the terms of same being mutually agreeable to all the parties thereto who are

also all the litigants named and involved in the case hereby affected by this agreement are ordered approved and directed to be carried out as set forth as a complete and final settlement of said causes of action in issue in said case. Further the present case ordered continued to Feb. 21st, 1944 for further disposition and orders of the Court. The Court retaining jurisdiction of the same.                                     CHARLES C. SACKMANN, *Judge.*"

Submitted to the court with the above "Agreement" was a document (5 pages) entitled "Memorandum re Contemplated Milner-Schaefer-Lewis Settlement." This classified the properties and stated which of the parties should receive designated portions thereof and contained certain covenants, set out in lettered subheads. We quote or summarize those portions of the instrument deemed pertinent:

"A. Assets Other Than Cash." All Texas property and all Kansas property except Hutchinson, Kansas, go to Schaefer and Lewis. Hutchinson subdivisions and contracts go to Milner.

"B. Cash Now in Hand and Hereafter Received. All cash in the Kansas receivership case," and in the Texas receivership case "goes to Schaefer and Lewis," and in the Colorado receivership cases to Milner.

"C. Receivership Expenses. (1) Expenses incurred by the Texas and Kansas receivers now unpaid or hereafter incurred, are to be paid by Schaefer and Lewis. (2) Expenses incurred by the Colorado receiver now unpaid or hereafter incurred are to be paid by Milner."

"H. The parties agree in good faith to do all acts and execute all instruments necessary to carry out the intent of the agreement outlined, and valid transfers in support of the agreement are to be procured." Their wives are to join.

"J. Business Personal Property." In Texas and Kansas, and Alameda office, to go to Schaefer and Lewis; in the downtown Denver office to go to Milner.

K. Deeds, abstracts of title and records to be delivered to party receiving the property.

"L. Upon the request of any of the three parties to this agreement, said agreement shall be incorporated in appropriate court decree, or decrees.

"M. The parties shall join in all requests, petitions and stipulations necessary to enable the prompt closing of the existing receiverships upon the carrying out of this agreement."

N. Provides for delivery of lithographs, cuts and prints pertaining to any property to the party receiving it.

O. Schaefer shall deliver to Milner customer deposits and ledger sheets pertaining to certain property, not here involved.

P. Pertains to Oklahoma property, not here involved.

Q. The agreement to be carried out within thirty days, unless the court should extend the time.

This instrument was dated at Denver, Colo., January 21, 1944, but it was not signed by anyone.

On January 19, 1949, Milner filed an answer to plaintiff's supplemental petition in which he admitted a partnership theretofore existed between the parties to the action in which their interests were equal; that he had brought an action for the dissolution of the partnership in the district court of the city and county of Denver, Colo., in which a receiver was appointed; that plaintiff had brought this action and obtained the appointment of a receiver, which receivership had been held to be ancillary to the Colorado receivership; and denied all other material allegations of the supplemental petition not later specifically admitted. He admitted signing the one page of the "Agreement" of Exhibit A, attached to the supplemental petition, but denied that the five-page memorandum part of Exhibit A was the Memorandum referred to in the "Agreement," and alleged that prior to May 28, 1942, the parties to this action were partners in various real estate brokerage businesses, one of which was constituted under the name of "The Milner Company," the assets of which included real estate, contracts and other personal property situated in Kansas, Colorado and other states; that the office of the company was maintained in Denver, Colo.; that on May 28, 1942, he filed an action against Schaefer and Lewis in the district court of the city and county of Denver for an accounting and a dissolution of The Milner Company, in which action a receiver was appointed; that issues were joined and the case proceeded to trial and was partially tried on January 17, 18 and 19, 1944, when the trial was recessed until January 21, and the court suggested that during the recess the parties should endeavor to effect a settlement of all their controversies; that the parties had conferences with their respective attorneys and through their attorneys consulted with each other during the evening of January 19, all day and the evening of January 20 until the early morning of January 21; that they were unable within that period to agree upon a full and final settlement of their controversies, but did agree on a broad outline; that when approaching the end of the trial recess the parties executed the one page tentative agreement, shown on Exhibit A, as an assurance to the court that progress was being made and that the parties would endeavor in good faith to formulate a full final contract of settlement; that the memorandum was not attached to the agreement when it was signed; that there was no agreement, either oral or in writing, that it would be filed in court or presented to the court for its approval; that such was not

authorized by Milner and was all done without his knowledge or consent; that no final judgment or decree has ever been entered by the Colorado court; that under Colorado rules of procedure 58 (a), 79 (C) (d) a judgment to be effective must be entered on the judgment docket, and that no order or purported judgment of the Colorado court has ever been so entered in that action; that no final settlement has ever been made in the Colorado action for the reason that Schaefer and Lewis have refused to negotiate further, contending the agreement of January 21, 1944, and the endorsement of the court thereon constituted a final contract of settlement; that Milner's petition for writ of error to the Colorado supreme court was dismissed without opinion, presumably for the lack of a final judgment (Rule 111 [A], Colorado Rules of Civil Procedure). It was further alleged that upon the failure of the parties, after January 21, 1944, to negotiate and effect a final settlement the subsequent proceeding of the court was without meaning or effect. It was further alleged that except for the filing of an answer Milner had not participated in the proceedings in that court, nor been represented by counsel, except for the limited purpose of determining the character of the receivership, whether primary or ancillary.

On February 8, 1949, plaintiff filed a reply to Milner's answer in which it was alleged that all material allegations and claims set out in the answer should or could have have been presented in the Colorado action; that the ruling and judgment of the Colorado court are *res judicata*, and that Milner is estopped by that record; that all material allegations and claims in Milner's answer should or could have been presented by him in the action in the district court of Bexar county, Texas. Copies of the pleading and judgment of the Texas court were attached. It was alleged that in this case Milner previously requested that the Colorado court be recognized as having jurisdiction of all matters at issue; that such adjudication has been recognized and given full faith and credit by the Texas court and held to be *res judicata*, and that by reason thereof Milner is now estopped to oppose the recognition by this court of any of the orders, rulings or judgments of the Colorado court.

On February 14, 1949, there was filed a motion to revive as to the defendant W. M. Lewis, which recited that he died testate May 21, 1944, a resident of Bexar county, Texas, where his will was duly admitted to probate, and that on November 17, 1944, it was duly admitted to probate in Sedgwick county, and that Tom Kornhaus

was duly appointed and that he qualified as administrator with the will annexed, and that he is still acting as such. This motion to revive was consented to by the plaintiff and by the defendant Milner, and on February 17, 1949, a proper order of revivor was made.

When the case was called for trial on March 23, 1949, it was stipulated that Tom Kornhaus, ancillary receiver, was being paid compensation at the rate of $150 per month and that since January, 1944, he had been paid approximately $9,300, and that his attorney had been paid through the same period the sum of $9,750.

The plaintiff offered in evidence Exhibits 2 to 19, inclusive, covering the proceedings in the Colorado and Texas receivership cases. Counsel for Milner objected to them upon the ground that they were immaterial, and specifically as to Exhibits 19 and 19A—being excerpts from testimony—as being incomplete. These objections were overruled. The defendant Milner offered in evidence Exhibits A, B and C, being portions of the record of the Colorado case, which were objected to by plaintiff as being self-serving and incomplete. The objections were overruled. Defendant then called as a witness Henley A. Calvert of Denver, who had been Milner's attorney in the latter part of the proceedings in the Colorado case. Counsel for plaintiff and counsel for Kornhaus, administrator c. t. a., objected to any oral testimony upon the ground that the documentary evidence offered clearly disclosed what judgment and decree should be entered for plaintiff, and that any oral testimony would be incompetent. The trial court took time to examine the documentary evidence. On March 28 there were hearings before the court as to the assessment of costs and receivership expenses, at which time written suggestions, not a part of the record, were submitted to the court and there was oral argument. The court announced it would consider the suggestions and within a day or two notify counsel of its decision. The court did so by letter on March 30 to the effect that the costs which had accrued since June 11, 1946, should be assessed against the defendant Milner. These were later computed by the attorneys to be $13,804.22.

In its judgment and decree the court found that the "supplemental petition of Sam H. Schaefer should be granted, except, that the receivership costs up to June 11, 1946, should be taxed against the plaintiff, Sam H. Schaefer, and defendant, Tom Kornhaus, administrator, c. t. a., and the receivership costs after June 11, 1946, should be taxed against the defendant, A. Milner."

We may remember the prayer of plaintiff's supplemental petition was for an order authorizing and directing the receiver to convey all the real property of the partnership in Reno county to Milner; that the action be dismissed with prejudice as to Milner, and that all costs and expenses of the receivership be taxed against Milner and decreed to be a lien upon his Reno county real estate.

The decree of the court was that the receiver convey all the right, title and interest of the partnership and of the parties in and to the Reno county real estate to Milner, and that Schaefer, the record title holder, execute to Milner a quitclaim deed to the Reno county property; that any and all the right, title and interest of the defendant Milner to the property inventoried by the receiver, except the Reno county property, be and the same is divested out of the defendant Milner and is hereby vested in the plaintiff Schaefer and the defendant Kornhaus, administrator, c. t. a., in equal shares; that the action be dismissed with prejudice as to the defendant Milner when there has been full compliance with the decree; that the receiver make a final report within thirty days; that upon approval by the court he is ordered to transfer and assign, convey and deliver all the property in his hands as receiver to the plaintiff Schaefer and the defendant Kornhaus, administrator, c. t. a., one-half to each, except the Reno county property; that upon those matters being carried out the receivership should be terminated and the receiver and his sureties on his bond be discharged. It was further ordered that the plaintiff Schaefer and the defendant Kornhaus, administrator, c. t. a., have judgment and recover from the defendant Milner all costs of court incurred and accrued after June 11, 1946, including receiver's fees and expenses, which amounted to $13,-804.22, for which sum judgment was entered, and that all costs of court that had accrued prior to such date, including the receiver's fees and expenses, be and they are taxed against the plaintiff Schaefer and the defendant Kornhaus, administrator, c. t. a., for all of which execution should issue against the respective parties liable therefor. It was further ordered that the costs accruing subsequent to the date of the decree be taxed against the defendant Milner and the court retain jurisdiction to determine the amount of such costs and to enter judgment for the same.

The receiver's report of May 18, 1948, covering his receipts and disbursements from January 21, 1944, to May 18, 1948, and his supplemental final report, filed May 5, 1949, covering the period

from May 18, 1948, to April 12, 1949, were before the court. These reports show that the total collections covered by the two reports to April 12, 1949, amounted to $162,793.93, and that the total expenditures covering the same period amounted to $120,646.98 (this included the disbursements to Schaefer and Lewis upon the *ex parte* applications of Schaefer, aggregating $60,097.00), leaving a balance on hand of $42,146.94. The reports also show that the total collections from Reno county amounted to $6,611.38 and the total expenses paid out on the Reno county property amounted to $1,628.34, leaving a balance of receipts above expenditures on the Reno county real estate of $4,983.04. Counsel for Milner argued that all the expenses of the receivership should be borne by Schaefer and Kornhaus, administrator c. t. a.; also that Milner should be paid out of funds in the hands of the receiver the collections from the Reno county property, less the expenses paid by the receiver thereon; while counsel for plaintiff and Kornhaus, administrator, c. t. a., argued that Milner should pay all of the expenses of the receivership, and that they were entitled to the balance in the hands of the receiver. It will be seen that the court did not follow either contention fully.

Counsel for Milner filed a motion for a new trial, and upon the hearing reargued all matters previously argued. They also introduced an affidavit of Henley A. Calvert, which included the testimony he would have given if he had been permitted to testify as a witness, to the effect that he had made a personal examination of the records of the district court in the Milner receivership in Colorado and found that no final judgment or decree had ever been entered in the records of the court, as required by Rules 58 (*a*) and 79 (*C*) (*d*) of the rules of civil procedure, effective April 6, 1941. They also filed an affidavit of the defendant Milner which pertained to the Colorado court action. The motion for a new trial was overruled. The defendant Milner has appealed from all adverse rulings in the decree of the court and from the order overruling the motion for a new trial. The plaintiff and the defendant Kornhaus, administrator, c. t. a., filed a cross-appeal from that part of the decree wherein the court refused to enter judgment against Milner for the receivership costs incurred from February 21, 1944, to June 11, 1946.

Much of the argument in this court pertains to whether the order of the judge of the district court of Colorado as written on the "Agreement" with the memorandum attached on January 21, 1941, constitutes a final judgment or decree of the court of which we must

take judicial notice under the provisions of the federal constitution. (Article 4, section 1.) As we read this record there never has been a final judgment or decree entered in the records of the district court of the city and county of Denver in this case in harmony with the provisions of the Colorado statute 58 (a) and 79 (C) (d). So far as the records before us disclose the case is still pending in the district court of Colorado and the primary receiver appointed by that court never has been discharged. The receivership in this state was adjudged to be ancillary to that in the Colorado district court (*Schaefer v. Milner*, 156 Kan. 768, 137 P. 2d 156), and so far as we know that relative status never has been changed.

Counsel for appellees argue that in the suit brought by Schaefer against Milner and Lewis in the district court of Bexar county, Texas, wherein Milner appealed, and the decision of the Court of Civil Appeals of Texas, San Antonio, as found in 211 S. W. 2d 600, the court recognized the order of the Colorado court entered on the "Agreement" January 21, 1944, as being such a judgment of another state as the Texas court was bound to recognize and follow under the federal constitution. Counsel for appellees place too much weight upon that point in the decision. The statutes of Colorado had not been pleaded nor introduced in evidence in that case, and the court had not been asked to take judicial notice of them under the Texas statute (Rule 184a, Texas Rules of Civil Procedure). Therefore, the court considered the statutes of Colorado to be the same as those of Texas, and construing the Texas statute and decisions held the Colorado order was to be regarded as final. It was further held that even if they were not, the "Agreement" approved by the order of the trial court on January 21, 1944, was one that could be enforced with respect to the property of the partnership in Texas.

However, it is clear that the order of the trial court of Colorado of January 21, 1944, is exactly what it purported to be, namely, an interim order of a trial court upon an important matter in a case then and still pending before it. We think it should be followed in this case as it pertains to the property of the partnership in Kansas. If that should prove to be inaccurate as to the division of the Kansas property, perhaps it may still be corrected in Colorado when the ancillary receiver in Kansas makes his report to the primary receiver in Colorado.

Since the "Agreement" with the accompanying memorandum, approved by the Colorado court on January 21, 1944, is to be the basis of the decree in the present action we turn directly to it. Under

assets other than cash it provides: "All Kansas property, except Hutchinson, Kan., go to Schaefer and Lewis. Hutchinson subdivisions and contracts go to Milner." In the decree of the court before us this provision was carried out, that is to say, all title and interest in the Kansas property (other than the Hutchinson subdivisions and contracts) not previously disposed of was "divested out of the defendant" Milner and "vested in the plaintiff, Sam H. Schaefer, and the defendant, Tom Kornhaus, administrator c. t. a., the estate of W. M. Lewis, in equal shares." Since this was fixed in the contract the decree might have been made promptly after January 21, 1944. As far as the respective rights of the parties to the property is concerned they should be considered as being effective as of that date rather than of the date of the decree from which this appeal is taken.

The memorandum further provided: "All cash in the Kansas receivership case goes to Schaefer and Lewis." We construe that to mean the cash in the hands of the Kansas receiver on January 21, 1944. Naturally, if the receivership continued, Schaefer and Lewis or his personal representative, would be entitled to the cash received after January 21, 1944, from the sale of the Kansas land which went to them under the memorandum. We do not construe it as meaning that if Milner's land and contract at Hutchinson, Kansas, were kept in the receivership that the moneys from such land received after January 21, 1944, should go to Schaefer and Lewis or his personal representative. The result of this is that whatever moneys were collected by the receiver in the Kansas case from Milner's Hutchinson, Kansas, property, less expenses paid by the receiver with respect to such property, after the date of January 21, 1944, should now be paid to Milner. The receiver's reports in this case show that the receiver collected $6,611.38 from Milner's land and contracts in Reno county subsequent to January 21, 1944, and paid out for taxes and other expenses on that land during the same period the sum of $1,628.34, leaving a balance in the receiver's hands from Milner's Reno county property of $4,983.04.

The memorandum approved by the Colorado court January 21, 1944, respecting the receivership expenses provides: "Expenses incurred by the Texas and Kansas receivers now unpaid or hereafter incurred, are to be paid by Schaefer and Lewis."

In plaintiff's supplemental petition he asked that all of the costs of the receivership be taxed to Milner. That view was strongly

pressed upon the court by plaintiff's counsel and strongly opposed by counsel for Milner, with the result that the court divided the costs of the receivership, taxing to plaintiff and Lewis or his personal representative, the costs to June 11, 1946, and taxing all subsequent costs to Milner. Both parties have appealed from that order. Appellees contend that Milner should be taxed with all the costs of the receivership in Kansas notwithstanding the statement in the memorandum approved by the Colorado court because he was not coöperative in carrying out that "Agreement" in respect to the execution of papers pertaining to the Kansas property, for which he was adjudged guilty of contempt on July 11, 1946. From the material contained in the abstracts and briefs a lengthy discussion might be made on this point, but we deem it unnecessary to do so. We do note that the finding of the contempt shown by the record would not be valid under our statutes and decisions. (See G. S. 1935, 20-1201 to 1207, particularly 1204, and *In re Gambrell,* 160 Kan. 620, 164 P. 2d 122; 161 Kan. 4, 165 P. 2d 760.) We express no view of its validity under Colorado statutes and procedure and shall indulge in the presumption that it was valid. But even with this view we think it did not justify the assessment of costs to the amount of more than $13,000 against Milner. Assuming that Milner was bound by the provisions of the memorandum approved by the Colorado court on January 21, 1944, that did not prevent the court in this case from divesting him of all of the title and interest in the Kansas property, other than the Reno county property, and vesting the title in Schaefer and the personal representative of Lewis, which as we formerly observed could have been done much earlier. While counsel for appellees severely criticize Milner for his attitude, the record discloses facts that would justify serious criticism of the appellees, particularly Schaefer. With the action brought by Milner pending in Colorado to dissolve The Milner Company partnership, for an accounting and distribution of its assets and the appointment of a receiver, Schaefer brought this suit and on an *ex parte* application had a receiver appointed without mentioning the fact that the Colorado suit was pending; and for that he was specifically criticized in our former decision (*Schaefer v. Milner,* 156 Kan. 768, 779, 137 P. 2d 156). Other things might be pointed out, but we shall not take the trouble to do so. We note the record shows that Schaefer is a son-in-law of Milner, that he was taken

into the partnership some years ago, and with the foresight, industry and coöperation of the partners the assets of the partnership were greatly increased. When they disagreed and Milner sought to dissolve the partnership it would appear from the record that maybe some conduct on both sides indicate the parties were governed more by their feelings than by their good judgment. The duties of the Kansas receiver pertain almost entirely to the property of the appellees. Judging from the receipts of the receiver, less than five percent of them was from the Kansas property set off to Milner. The work of the receiver consisted largely in collecting money on contracts for the sale of lots. There was a large number of these contracts, particularly in the Sedgwick county addition to Wichita, upon which the parties were paying weekly or monthly. In the receiver's final report he stated that all of the property had been sold and that there were still sixty-eight outstanding contracts. If there had been no receiver and the property had been turned over to appellees shortly after January 21, 1944, the appellees would have had to have someone make those collections and when deeds were due, get abstracts of title and close the transactions. In such a situation none of that expense would have fallen upon Milner. It seems inherently unjust that Milner should have to pay any part of what normally was the expense of the conduct of business by the appellees.

Since appellees rely upon the contract and memorandum approved by the Colorado court on January 21, 1944, to receive title to the property of the partnership in Kansas, other than that of the Reno county property, there is no reason why they should not be required to comply with the provisions of the memorandum with respect to the payment of the costs of the receiver. Milner did not appeal from that portion of the decree of the court which vested title in him of the Reno county property and directed Schaefer to execute a quitclaim deed for that property to Milner. Schaefer had the same duty under the memorandum approved by the Colorado court to execute instruments to convey to Milner the property set off to him that Milner had to execute similar conveyances to the appellees. It appears he had not done so at the time of the decree in this case. Whether he has done so now is not shown by the record before us.

At the request of appellees the court dismissed the action with prejudice as to Milner. We think that should not have been done. Since Milner had property rights determined in the decree we see

no reason for dismissing the action as to him; but if such dismissal were made, it should have been without prejudice.

Counsel for the respective parties have cited a large number of authorities on a variety of questions. We have examined all these questions and most of the authorities cited in support of them, but we find it unnecessary to comment upon them here more than we have done. For, after all, if we take the "Agreement," with the accompanying memorandum approved by the judge of the Colorado court on January 21, 1944, as our guide, there is not much difficulty in determining the rights of the respective parties here.

From what has been said the judgment of the trial court must be reversed with directions to authorize and direct the receiver to pay from the money in his hands the sum of $4,983.04 to the appellant Milner and to assess all of the costs of the receivership which have accrued, or may accrue, to the plaintiff Schaefer and the defendant Kornhaus, administrator c. t. a., of the estate of Lewis, and that the receiver be directed to make an appropriate report to the primary receiver appointed in the action in the district court of the city and county of Denver, Colo.

It is so ordered.